UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
Case No. 25-1386

_____

JASON COURTEMANCHE, BRETT FORESMAN, JUAN RIOS, and DENNIS
WILLIAMS, on behalf of themselves and all others similarly situated,
Plaintiffs – Appellees,

v.

GEOFFREY D. NOBLE, in his official capacity as Superintendent of the
Massachusetts State Police
Defendant – Appellant

and

MOTOROLA SOLUTIONS, CALLYO 2009 CORP. and SHI INTERNATIONAL
CORP.,
Defendants.

_____

On Interlocutory Appeal from an Order of the United States District Court
for the District of Massachusetts

_____

BRIEF OF DEFENDANT-APPELLANT GEOFFREY D. NOBLE

_____

<div style="margin-left:45%">

ANDREA JOY CAMPBELL
    *Attorney General of Massachusetts*
Jeffrey T. Collins, 1st Cir. No. 1139870
    *Special Assistant Attorney General*
Robert Papandrea, 1st Cir. No. 1216847
MORGAN, BROWN & JOY, LLP
28 State Street, 16th Floor
Boston, MA 02109-2605
(617) 523-6666
jcollins@morganbrown.com
rpapandrea@morganbrown.com

</div>

Dated: October 2, 2025         *Attorneys for Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ........................................................................ ii

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF THE ISSUES ................................................................2

STATEMENT OF THE CASE...................................................................3

SUMMARY OF ARGUMENT..................................................................10

STANDARD OF REVIEW ......................................................................12

ARGUMENT ..........................................................................................13

  I.  THE ELEVENTH AMENDMENT BARS PLAINTIFFS' 42 U.S.C. § 1983 CLAIM ...........................................................................................13

    A.  The Eleventh Amendment Prohibits Suits Against a State in Federal Court ....................................................................................13

    B.  Plaintiffs Improperly Seek to Enjoin Alleged Violations of State Law in Violation of the Eleventh Amendment ................................................14

    C.  Plaintiffs Fail to Allege an Ongoing Violation of Federal Law Under *Ex Parte Young* .........................................................................17

    D.  The FAC Fails to Sufficiently Allege *Brady* Violations...........................18

    E.  The FAC Fails to Allege an Ongoing Violation of Federal Law..............22

  II.  PLAINTIFFS LACK STANDING TO PURSUE THEIR 42 U.S.C. § 1983 CLAIM ...........................................................................................23

CONCLUSION .......................................................................................29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ..................31

CERTIFICATE OF SERVICE .................................................................31

ADDENDUM ..........................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................12, 20

*Ayyadurai v. Galvin*,
560 F. Supp. 3d 406 (D. Mass. 2021).............................................................22

*Benjamin v. Aroostook Med. Ctr., Inc.*,
57 F.3d 101 (1st Cir. 1995)..........................................................................12

*Berner v. Delahanty*,
129 F.3d 20 (1st Cir. 1997)..........................................................................11

*Brady v. Maryland*,
373 U.S. 83 (1963)...............................................................................*passim*

*Broam v. Bogan*,
No. CVN000389ECRRAM, 2004 WL 7334393 (D. Nev. July 29, 2004).........28

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...............................................................................*passim*

*Commonwealth v. Aponte*,
No. 2216CR000495 ....................................................................................6

*Cotto v. Campbell*,
126 F.4th 761 (1st Cir. 2025).......................................................................12

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*,
958 F.3d 38 (1st Cir. 2020)............................................................................1

*Doe v. Shibinette*,
16 F.4th 894, 903 (1st Cir. 2021) ..................................................................12

*Fitch v. City of Claremont*,
No. LACV1407852JAKSSX, 2015 WL 13387590
(C.D. Cal. Mar. 2, 2015)..............................................................................21

*Flores v. Satz,*
    137 F.3d 1275 (11th Cir. 1998) ...............................................................19

*Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
    528 U.S. 167, 180–181 (2000) ...............................................................23

*Hootstein v. Collins,*
    670 F. Supp. 2d 110 (D. Mass. 2009)...............................................17, 22

*Kowalski v. Gagne,*
    914 F.2d 299, 305 (1st Cir. 1990) ............................................................4

*Lane v. First Nat'l Bank,*
    871 F.2d 166, 172 n. 5 (1st Cir. 1989) ...................................................18

*Livers v. Schenck,*
    700 F.3d 340 (8th Cir. 2012) ..................................................................19

*Lopez v. Massachusetts,*
    588 F.3d 69 (1st Cir. 2009).......................................................................2

*O'Shea v. Littleton,*
    414 U.S. 488 (1974)........................................................................*passim*

*Papasan v. Allain,*
    478 U.S. 265, 278 (1986) ........................................................................18

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
    506 U.S. 139 (1993)...................................................................................1

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984)..........................................................................*passim*

*Rodi v. S. New Eng. Sch. of L.,*
    389 F.3d 5 (1st Cir. 2004)..........................................................................4

*Rosie D. ex rel. John D. v. Swift,*
    310 F.3d 230 (1st Cir. 2002)..............................................................17, 18

*Santiago v. Puerto Rico,*
    655 F.3d 61 (1st Cir. 2011)......................................................................12

*Simon v. E. Kentucky Welfare Rts. Org.*,
  426 U.S. 26 (1976)...................................................................................23

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)..............................................................................23

*Swint v. Chambers County Comm'n*,
  514 U.S. 35, 51 (1995) ...........................................................................2

*United States v. Agurs*,
  427 U.S. 97 (1976)............................................................................4, 19

*United States v. Bagley*,
  473 U.S. 667 (1985)..............................................................................21

*United States v. Mathur*,
  624 F.3d 498 (1st Cir. 2010).............................................................18, 19

*United States v. Rodriguez*,
  29 F.3d 619 (1st Cir. 1994).....................................................................19

*United States v. Ruiz*,
  536 U.S. 622 (2002)...............................................................................19

*United States v. Stamper*,
  No. CR 11-00023, 2015 WL 12732900 (W.D. La. July 31, 2015) ....................20

*Urella v. Verizon New England, Inc.*,
  682 F. Supp. 3d 134 (D. Mass. 2023).....................................................*passim*

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
  535 U.S. 635 (2002)............................................................................2, 18

*Whalen v. Massachusetts Trial Ct.*,
  397 F.3d 19 (1st Cir. 2005).....................................................................18

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989)................................................................................13

*Wojcik v. Mass. State Lottery Comm'n*,
  300 F.3d 92 (1st Cir. 2002).....................................................................13

**Statutes**

28 U.S.C. § 1331 ......................................................................................1

42 U.S.C. § 1983 ................................................................................*passim*

Mass. Gen. Laws ch. 151B ......................................................................16

Mass. Gen. Laws ch. 272, § 99 ...........................................................*passim*

**Other Authorities**

Fed. R. Civ. P 8(a)(2)..............................................................................13

Fed. R. Civ. P 12(b)(6).............................................................................12

Fed. R. App. P. 4(a)(1)(A) ........................................................................1

Fed. R. App. P. 32(a)(5)...........................................................................31

Fed. R. App. P. 32(a)(6)...........................................................................31

Fed. R. App. P. 32(a)(7)(B)(i)...................................................................31

Fed. R. App. P. 32(f)................................................................................31

U.S. Const. Amend XI ......................................................................*passim*

# JURISDICTIONAL STATEMENT

This appeal concerns a purported federal constitutional claim brought under 42 U.S.C. § 1983 over which the District Court had federal-question jurisdiction under 28 U.S.C. § 1331. The District Court denied Defendant Noble's Motion to Dismiss this claim, concluding that Defendant Noble was not entitled to Eleventh Amendment immunity, Plaintiffs had standing to pursue prospective injunctive relief in federal court, and that Plaintiffs sufficiently pled a § 1983 claim. *See* Addendum, at pp. 35-46.

This Court has jurisdiction to consider an appeal from the denial of Eleventh Amendment immunity under the collateral order doctrine. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993). This Court has jurisdiction to consider questions of Article III standing in an appeal from the denial of immunity. *See Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 43 (1st Cir. 2020).

Under Federal Rule of Appellate Procedure 4(a)(1)(A), a notice of an appeal as of right "must be filed with the district clerk within 30 days after entry of the judgment or order appealed." The District Court entered the appealed-from Order on March 28, 2025. *See* Addendum. Defendant Noble filed his Notice of Appeal on April 18, 2025. *See* Appendix, at pp. 13-15.

The Court also has appellate jurisdiction to consider Plaintiffs' purported constitutional claim on its merits. A federal appeals court has the authority to exercise pendent appellate jurisdiction over typically unappealable portions of an order where the issue is either "inextricably intertwined" with a denial of immunity, or if review of the pendent issue "was necessary to ensure meaningful review" of immunity. *See Lopez v. Massachusetts*, 588 F.3d 69, 81 (1st Cir. 2009), citing *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995). Both circumstances are present in this appeal. To determine whether Defendant Noble is entitled to Eleventh Amendment immunity, the Court is required to determine whether Plaintiffs sufficiently allege an ongoing violation of federal law. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002). Thus, whether Plaintiffs sufficiently allege constitutional claims in the first instance is inextricably intertwined with Defendant Noble's Eleventh Amendment immunity defense, and the Court cannot meaningfully review the scope of Defendant Noble's immunity without determining whether Plaintiffs state a claim for constitutional violations.

## STATEMENT OF THE ISSUES

1. Whether Plaintiffs' claim for prospective injunctive relief seeking to require the Massachusetts State Police to comport with state law falls under the *Ex Parte Young* doctrine's exception to Eleventh Amendment immunity.

2

2. Whether Plaintiffs sufficiently allege an ongoing violation of federal law to fall within the *Ex Parte Young* doctrine's exception to Eleventh Amendment immunity.

3. Whether Plaintiffs lack Article III standing to seek prospective injunctive relief seeking to require the MSP to comply with *Brady v. Maryland* where they do not have active criminal cases related to surreptitious recordings at-issue in this litigation.

<div align="center">**<u>STATEMENT OF THE CASE</u>**</div>

In their First Amended Complaint ("FAC"), Plaintiffs-Appellees ("Plaintiffs") seek to "ensure that" alleged "acts" by the Massachusetts State Police ("MSP"), including allegedly unlawfully creating "audio and video recordings of persons in Massachusetts" and "fail[ing] to turn over these recordings to Plaintiffs" "are never again repeated in the Commonwealth of Massachusetts." *See* Appendix, at pp. 16-17. Plaintiffs claim to "seek equitable relief, specifically a declaration that their arrest, detention, imprisonment, the deprivation of their monies, labor associated with their community service, and seizure of property violates constitutional due process, and" unspecified "injunctive relief." *Id*. at p. 18.

Plaintiffs allege in their FAC that in at least 181 known situations, the MSP brought criminal charges against individuals they secretly recorded, and these recordings were not disclosed to prosecuting agencies or Plaintiffs. *See id*. at p. 17.

However, documents of which the Court may take judicial notice[1] demonstrate that there were no violations of the Supreme Court's mandate in *Brady v. Maryland*, 373 U.S. 83 (1963).[2] Plaintiff Courtemanche acknowledged in a motion to suppress, filed by his lawyer on his behalf, that he received an at-issue recording prior to trial in his criminal matter (which never took place prior to his charges being dismissed). *See* Appendix, at pp. 58-62; 68-78. Plaintiff Foresman similarly filed a motion prior to trial where he sought to suppress a video and audio recording of him allegedly selling drugs to an undercover police officer. *See id*. at pp. 79-82. The charges against Plaintiff Foresman were dismissed prior to trial. *Id*. at pp. 63-67. Plaintiff Rios pled to a Continued Without a Finding prior to any trial, and his charges were subsequently dismissed. *See id*. at pp. 55-57; May 21, 2025 Opposition to Motion for Stay ("Opp. to Mot. for Stay"), at p. 12. Plaintiff Williams' charges also were disposed of in his favor without a trial. *See* Opp. to Mot. for Stay, at p. 12.[3] Plaintiffs acknowledge that the criminal cases against them

---

[1] "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." *Rodi v. S. New Eng. Sch. of L.*, 389 F.3d 5, 19 (1st Cir. 2004), citing *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990).

[2] Under *Brady* and *United States v. Agurs*, suppression by the prosecution until after trial of evidence favorable to an accused upon request violates due process. *See United States v. Agurs*, 427 U.S. 97, 103 (1976); *Brady v.* Maryland, 373 U.S. 83, 87 (1963).

[3] Defendant Noble has filed a motion to seal additional relevant background material, and he is including this information in a provisionally sealed supplemental appendix.

that serve as the basis of this litigation have all been dismissed. *See* Opp. to Mot. for Stay, at p. 12.

Further, to the extent the FAC can be construed to allege that the MSP failed to meet its *Brady* obligations, it fails to allege that the MSP continues to make such recordings without producing them to prosecuting agencies and is probative that prosecuting agencies and defense attorneys possess the necessary information regarding these alleged recordings. Indeed, Exhibit A to the FAC, which purports to be a letter issued by the MSP discussing criminal cases where surreptitious recordings were not produced to prosecuting agencies, bears the footer "DA Discovery Packet 5 (10-26-23)," clearly demonstrating that information regarding the at-issue recordings are both in the possession of prosecuting agencies and criminal defense attorneys. Appendix, at pp. 42-52.

On October 25, 2024, Defendant Noble filed a Motion to Dismiss. With respect to Eleventh Amendment immunity, Defendant Noble argued that the FAC fails to allege a present violation of federal law and fails to seek relief that can be properly characterized as prospective. Defendant Noble also noted that if Plaintiffs intended to argue that they are seeking an injunction to prevent the MSP from creating secret recordings in the future, they would not have standing to seek such relief because the FAC failed to allege that the MSP's alleged actions caused constitutional injury, and because it failed to allege ongoing constitutional

violations redressable by a federal court. In opposition, Plaintiffs stated in conclusory fashion that they seek injunctive relief to "cease and curtail ongoing violations of federal constitutional rights." *See* Appendix, at p. 86. Rather than allege an ongoing violation of federal law, Plaintiffs alleged that the MSP has failed to respond to public records requests, discovery orders, and trial summons made within the parameters of state law or rules of procedure. *Id*. at 86-87.

On March 28, 2025, the District Court issued an order denying Defendant Noble's motion to dismiss Plaintiffs' § 1983 claim, stating that Plaintiffs plausibly pled a § 1983 claim based on alleged violations of *Brady v. Maryland*, 373 U.S. 83 (1963) and that the court had jurisdiction over Plaintiffs' claims. Addendum, at pp. 34-46. The court identified a *"Brady* injury," citing to a decision by Fitchburg District Court Judge LoConto, and expanding on his decision without any basis by definitively stating that production of the at-issue recordings "would have" revealed issues pertaining to "identity and entrapment." *Id*. at pp. 39-40.[4]

---

[4] In his decision in *Commonwealth v. Aponte*, No. 2216CR000495, Judge LoConto noted that the defendants did not make any arguments about identity and entrapment, but simply stated that "each defendant was not able to explore . . . identity and entrapment." *See* Appendix, at p. 123. Judge LoConto did not state that the videos "would have revealed" issues of identity and entrapment as the District Court claims. *Id*. Indeed, with respect to identity, Plaintiffs concede the point by alleging in the FAC that they were the subjects of the at-issue recordings. *Id*. at pp. 21-22.

With respect to Defendant Noble's Eleventh Amendment immunity argument, the District Court stated that Plaintiffs plausibly alleged prospective injunctive relief. *Id*. at 35-37. The District Court stated that drawing all inferences in Plaintiffs' favor, Plaintiffs ask the court to enjoin the MSP from using Callyo applications to make surreptitious recordings of the public, and from failing to disclose such recordings in criminal prosecutions. *Id*. at 43. However, an order that would enjoin the MSP from using Callyo applications in criminal investigations would be, at best, an order requiring the MSP to comply with state law (i.e., M.G.L. c. 272, § 99, the Massachusetts Wiretap Act) which the court does not have jurisdiction to do. Further, with respect to *Brady*, there are no allegations in the FAC that sufficiently allege that the MSP are committing *Brady* violations in similar criminal investigations on an ongoing basis.

The District Court also stated that Plaintiffs have standing to pursue this relief. Initially, the court stated that Plaintiffs sufficiently alleged that the MSP continues to use Callyo recordings in criminal investigations. *Id*. at 42. The court then stated that "[u]ntil there is proof or an unequivocal statement from MSP that it has completely terminated the use of the Callyo apps for covert recordings and that every single covert recording already made has been disclosed in any relevant criminal proceeding, the threat that MSP will engage in the same conduct against Plaintiffs and others similarly situated is a live issue. It is not as if Plaintiffs lead

7

their lives with signs over their heads indicating their cases were implicated in the MSP audit of officers' use of the Callyo apps. In other words, MSP's past alleged injuries against Plaintiffs do not offer Plaintiffs any protection from the same conduct being repeated against them. To an MSP officer in the field, Plaintiffs are like any other member of the public, and until MSP unequivocally terminates the Callyo app recording features, Plaintiffs and putative class members could be subject to the same practices again." *Id*. In addition, to find a sufficiently alleged risk of future injuries, the District Court cited to Plaintiffs' allegations of alleged violations of state law (i.e., the Massachusetts Wiretap Act) and rules of procedure. *Id*. at 42-43. The District Court's holding was a clear error of law, as the risk of Plaintiffs being subjected to the same alleged conduct by the MSP is per se speculative and conjectural under Supreme Court precedent. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

In this Action, Plaintiffs improperly seek to use a § 1983 claim in a thinly veiled attempt to, in their minds, hold the MSP accountable for alleged violations of state law, which the Court should not permit. Indeed, Plaintiffs admit that they brought this § 1983 claim against the MSP almost entirely for alleged violations of

state law,[5] including for: (1) "unlawfully" recording the Plaintiffs (under the Massachusetts Wiretap Act); (2) "improperly" housing the recordings (purportedly due to the Massachusetts Wiretap Act); and (3) not cooperating with efforts to discover "the full extent of MSP's wrongdoing" (in violation of the Massachusetts Rules of Criminal Procedure and public records law). Opp. to Mot. for Stay, at p. 2. The only alleged violation of federal law in the FAC is that the MSP allegedly failed to produce at-issue recordings to Plaintiffs during their criminal cases in violation of the *Brady* doctrine. *Id*.

The District Court erred in holding that Defendant Noble is not immune from suit under the Eleventh Amendment to the United States Constitution. The court did so initially by concluding that Plaintiffs plausibly alleged a *Brady* violation even though Plaintiffs failed to allege that the at-issue recordings were exculpatory in nature, and none of their cases went to trial. The court also erred in holding that Defendant Noble is not immune from suit under the Eleventh Amendment because Plaintiffs do not allege any ongoing violations of federal law, and because its holding was predicated on alleged violations of state law. The District Court further erred in holding that Plaintiffs have standing to seek prospective injunctive relief against Defendant Noble in federal court, as the risk of

---

[5] As discussed *infra*, Plaintiffs attempt to state a *Brady* claim, which fails on standing, immunity, and plausibility grounds.

Plaintiffs suffering future constitutional injury rests on per se speculative assumptions that they will be arrested and tried for future crimes based on surreptitious audio recordings, and that when they do, the MSP will invariably violate *Brady*. This Court should reverse the District Court's findings with an instruction to enter dismissal of Plaintiffs' FAC with prejudice.

## SUMMARY OF ARGUMENT

Plaintiffs' § 1983 claim is barred by the Eleventh Amendment. At the motion to dismiss stage, the District Court stated that Plaintiffs seek an injunction that would prevent the MSP from using Callyo applications in criminal investigations and held that seeking such an injunction was consistent with *Ex Parte Young*. By doing so, the District Court made a clear legal error. In *Pennhurst State School & Hosp. v. Halderman*, the Supreme Court stated that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. . . . [*Ex Parte*] *Young* . . . [is] inapplicable in a suit against state officials on the basis of state law." 465 U.S. 89, 106 (1984). The requested injunctive relief would require the District Court to instruct the MSP to conform with the Massachusetts Wiretap Act, which it does not have authority to do. To the extent there is any federal law basis to Plaintiffs' claims under *Brady v. Maryland*, such a claim fails

because Plaintiffs fail to sufficiently allege a *Brady* violation, and even if they did, they do not allege that *Brady* violations are ongoing. Accordingly, Plaintiffs' § 1983 claim is barred by the Eleventh Amendment.

Plaintiffs do not have standing to seek the other form of injunctive relief discussed in the District Court's order, which is to require the MSP to disclose covert recordings made with the Callyo applications in criminal prosecutions in entirely speculative potential future scenarios. To have standing to seek prospective injunctive relief, a plaintiff must not only meet the traditional elements of standing but also show that there is a sufficient likelihood that he will again be wronged in a similar way. *See Berner v. Delahanty*, 129 F.3d 20, 24 (1st Cir. 1997), citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). "The prospect of future injury rests on the likelihood that [Plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to" *Brady* violations. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). However, courts "assume that [Plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by [MSP]." *Id*. Accordingly, the prospect of future injury for Plaintiffs is per se speculative and conjectural, and thus, Plaintiffs lack standing to seek the requested prospective injunctive relief.

For these reasons, Plaintiffs' FAC should be dismissed for lack of jurisdiction. This Court should reverse the District Court's order.

**<u>STANDARD OF REVIEW</u>**

The Court's review of the District Court's denial of Defendant Noble's motion to dismiss based on Eleventh Amendment immunity, standing, and the sufficiency of the allegations under Fed. R. Civ. P 12(b)(6), is de novo. *See Cotto v. Campbell*, 126 F.4th 761, 767 (1st Cir. 2025), citing *Doe v. Shibinette*, 16 F.4th 894, 903 (1st Cir. 2021) (Eleventh Amendment immunity); *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011) (Rule 12(b)(6)); *Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 104 (1st Cir. 1995) (standing). With respect to standing, it is Plaintiffs' burden to allege facts sufficient to establish standing. *Benjamin*, 58 F.3d at 104.

In conducting this review, the Court accepts as true all well-pleaded facts alleged in the FAC and draws all reasonable inferences in the pleader's favor. *Santiago*, 655 F.3d at 72. However, "gauzy generalities will not suffice." *Id*. Neither do "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id.* "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief'" the complaint must be dismissed. *Id*., quoting Fed. R. Civ. P. 8(a)(2) ("Rule 8").

## ARGUMENT

### I. THE ELEVENTH AMENDMENT BARS PLAINTIFFS' 42 U.S.C. § 1983 CLAIM

#### A. The Eleventh Amendment Prohibits Suits Against a State in Federal Court

"[S]tates are immune under the Eleventh Amendment from private suits in federal courts, absent their consent." *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002) (citation and quotation marks omitted). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). "As such, it is no different from a suit against the State itself." *Id*. (citations omitted). Accordingly, "a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).

Here, Defendant Noble has not waived his sovereign immunity, and § 1983 does not abrogate state sovereign immunity. Thus, the Eleventh Amendment presumptively bars Plaintiffs' § 1983 claim.

### B. Plaintiffs Improperly Seek to Enjoin Alleged Violations of State Law in Violation of the Eleventh Amendment

Although a limited exception to sovereign immunity permits suits to enjoin state officials to conform future conduct to the requirements of federal law, federal courts are not permitted to enjoin alleged violations of state law. As the Supreme Court held in *Pennhurst State Sch. & Hosp. v. Halderman*, "the entire basis for the doctrine of *Young* . . . disappears" when the claim rests on state law. 465 U.S. 89, 106 (1984). "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id*. Accordingly, federal courts lack jurisdiction over such claims, regardless of how they are framed.

Despite disguising it as a claim to vindicate alleged ongoing violations of the constitution, Plaintiffs' § 1983 claim is, for the most part,[6] a thinly veiled attempt to hold Defendant Noble accountable for alleged violations of state law. Indeed, several Paragraphs of Plaintiffs' FAC that address their purported § 1983 claim are devoted

---

[6] The only federal basis to this litigation is Plaintiffs' *Brady* claim. Defendant Noble's Eleventh Amendment immunity, the insufficiency of Plaintiffs' allegations in the FAC, and their lack of standing, are all discussed *infra*.

to alleged violations of state, not federal, law. *See* Appendix, at pp. 35-38. In opposing Defendant Noble's motion to dismiss, Plaintiffs, in conclusory fashion, stated that the FAC seeks to address "ongoing violations of federal constitutional rights," but then immediately pivoted to discussions of the MSP's alleged failure to respond to public records requests, discovery orders, and trial summons regarding the Callyo applications. *See id.* at 86-87. However, the at-issue public records and discovery requests were ones made under *state* law or the Massachusetts Rules of Criminal Procedure and are entirely irrelevant from a constitutional perspective. In arguing that they seek to curtail ongoing constitutional violations, Plaintiffs did not cite a *single* federal constitutional issue, limiting their discussion to only issues of state law. Nevertheless, the District Court, in discussing the "ongoing" nature of the MSP's alleged unlawful conduct, cited to Plaintiffs' argument concerning this point. *See* Addendum, at pp. 42-43.

Since the initiation of this appeal, Plaintiffs have made their improper intentions behind this § 1983 claim even more explicit. Indeed, Plaintiffs admitted to bringing their § 1983 claim against the MSP "for unlawfully recording the Plaintiffs using Motorola products . . . [and] improperly housing such recordings on a Motorola-established server . . . ." *See* Opp. to Mot. for Stay at p. 2. However, these are also issues of state law, as both the alleged "unlawful" nature of the at-issue recordings and their "housing" arise from the Massachusetts Wiretap Act, i.e., state

law. To the extent Plaintiffs seek to enjoin the MSP from, in their words, "unlawfully recordings the Plaintiffs" and "improperly housing such recordings" on a server, the Court "is without power to order such relief." *See Urella v. Verizon New England, Inc.*, 682 F. Supp. 3d 134, 139 (D. Mass. 2023), citing *Pennhurst*, 465 U.S. at 106 (holding that claim seeking to enjoin the Massachusetts Commission Against Discrimination from violating the Massachusetts Constitution and Mass. Gen. Laws ch. 151B is prohibited under the Eleventh Amendment).

Nevertheless, in discussing Plaintiffs' § 1983 claim in its order denying Defendant Noble's motion to dismiss, the District Court adopted a state law basis for Plaintiffs' § 1983 claim to proceed by stating that Plaintiffs seek injunctive relief "for MSP to stop . . . the use of the Callyo apps to make surreptitious recordings of the public . . . ." *See* Addendum, at p. 43. Such a claim for relief, however, is beyond the scope of a federal court's authority. *See Urella*, 682 F. Supp. 3d at 193; *Pennhurst*, 465 U.S. at 106. Surreptitiously recording the public does not violate any federal statute or the Constitution, and thus, such an injunction would be improperly tailored to ensure that the MSP conforms its activities to state law. *Id*.

The same can be said of the alleged "improper" housing of such recordings. Put differently, there is nothing "unlawful" or "improper" about the alleged recordings from a constitutional perspective; rather, the alleged illegality of the recordings are issues of state law. In addition, Plaintiffs contend that the MSP failed

to respond to public records requests made under *state law* and avoided discovery requests made by criminal defense attorneys, in violation of the Massachusetts Rules of Criminal Procedure. These are, again, state law/rules issues, not federal constitutional issues.

Simply stated, Plaintiffs seek an injunction requiring the MSP to comply with state law and rules. However, Plaintiffs' FAC, "on its face, fails to identify any ongoing violations of federal law that they seek to enjoin," and thus, there is no "injunctive or equitable relief [they could obtain] without running afoul of the Eleventh Amendment." *Hootstein v. Collins*, 670 F. Supp. 2d 110, 115 (D. Mass. 2009). This Court lacks jurisdiction over these claims, and the District Court erred in relying on alleged violations of state law to support its ruling that Defendant Noble was not entitled to Eleventh Amendment immunity. *See id.* (dismissing complaint that sought to require a state official to comply with state regulations, as "a federal court cannot hear suits in which a plaintiff attempts to force a state official to comply with state law.")

### C. Plaintiffs Fail to Allege an Ongoing Violation of Federal Law Under *Ex Parte Young*

A limited exception to sovereign immunity "allows federal courts, 'notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony, [to] enjoin state officials to conform future conduct to the requirements of federal law.'" *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230,

234 (1st Cir. 2002), quoting *Lane v. First Nat'l Bank*, 871 F.2d 166, 172 n. 5 (1st Cir. 1989). This exception, created by *Ex Parte Young*, requires courts analyzing a §1983 claim against a state to answer, "whether the relief [sought] 'serves directly to bring an end to a *present violation of federal law*.'" *Whalen v. Massachusetts Trial Ct.*, 397 F.3d 19, 29 (1st Cir. 2005), quoting *Papasan v. Allain*, 478 U.S. 265, 278 (1986) (emphasis added). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002).

Here, Defendant Noble is entitled to Eleventh Amendment immunity with respect to Plaintiffs' § 1983 claim because: (1) the FAC fails to sufficiently allege *Brady* violations; and (2) even if the FAC sufficiently alleged past *Brady* violations, it does not allege *ongoing Brady* violations.

### D. The FAC Fails to Sufficiently Allege *Brady* Violations

To establish a *Brady* claim, Plaintiffs are required to establish three elements: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the government either willfully or inadvertently; and (3) prejudice must have ensued. *See United States v. Mathur*, 624 F.3d 498, 503 (1st Cir. 2010)

(citations omitted). "The animating principle of *Brady* is the 'avoidance of an unfair trial.'" *Id*., citing *Brady*, 373 U.S. at 87. Accordingly, Plaintiffs' *Brady* claims fail because they were not subjected to unfair trials; indeed, they were not tried at all. *Id*.

According to the United States Supreme Court, the *Brady* rule is implicated when information is discovered "after trial" that had been known to the prosecution but unknown to the defense. *See United States v. Agurs*, 427 U.S. 97, 103 (1976). *See also United States v. Ruiz*, 536 U.S. 622, 631 (2002) (describing the *Brady* right to exculpatory and impeachment information as a "trial-related" right); *Mathur*, 624 F.3d at 507 ("It is . . . universally acknowledged that the right memorialized in *Brady* is a trial right."). For this reason, the Supreme Court has held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Ruiz*, 536 U.S. at 633. As *Brady* is a trial right, it similarly follows that a *Brady* violation cannot lie where charges are dismissed prior to trial. *See United States v. Rodriguez*, 29 F.3d 619 (1st Cir. 1994) (holding that failure to disclose material related to conspiracy charge did not violate *Brady* where the charge was dismissed prior to trial). *See also Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012) (holding that there is no *Brady* violation where the defendants were not convicted); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) (holding that *Brady* is not implicated where the plaintiff was never convicted).

Here, Plaintiffs' *Brady* claim is precluded by the disposition of their criminal cases. Plaintiffs Courtemanche's and Foresman's charges were dismissed prior to trial. *See* Appendix, at pp. 58-67. Plaintiff Rios' charges were dismissed after a Continuance Without a Finding. *Id*. at p. 55-57; Opp. to Mot. for Stay, at p. 12. Plaintiff Williams' charges were also dismissed without a trial. Opp. to Mot. for Stay, at p. 12. Accordingly, Plaintiffs cannot establish that Defendant Noble violated their rights under *Brady*.

Plaintiffs also cannot establish a *Brady* claim because they fail to allege in the FAC that the at-issue recordings were exculpatory. The allegations in the FAC fall far short of Plaintiffs' obligation to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Indeed, Plaintiffs made no effort in the FAC to describe how the at-issue recordings were allegedly exculpatory, apart from merely stating in conclusory fashion that they were deprived of exculpatory evidence. *See* Appendix, at p. 36. However, it is well established that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. As Plaintiffs fail to plausibly allege that the at-issue recordings were exculpatory, they cannot establish their *Brady* claim, and their § 1983 claim is subject to dismissal. *See, e.g., United States v. Stamper*, No. CR 11-00023, 2015 WL 12732900, at *5 (W.D. La. July 31, 2015) (rejecting *Brady*

argument where defendant alleged that law enforcement failed to make him aware of witness interviews, but failed to explain or offer any evidence of how the interviews were exculpatory, impeaching, or material); *Fitch v. City of Claremont*, No. LACV1407852JAKSSX, 2015 WL 13387590, at *8 (C.D. Cal. Mar. 2, 2015) (dismissing § 1983 *Brady* action where the plaintiff failed to allege any specific facts as to the evidence that was allegedly wrongfully withheld and how it was exculpatory for plaintiff).

Plaintiffs also cannot establish a *Brady* claim because they fail to meet the "materiality" element. To establish a *Brady* claim, Plaintiffs must demonstrate a "reasonable probability" that had the allegedly suppressed evidence been disclosed to the defense, "the result of the trial would have been different." *United States v. Bagley*, 473 U.S. 667, 684 (1985). Since Plaintiffs' cases never went to trial, the reasonable probability prong cannot be met. Furthermore, Plaintiffs fail to plausibly allege that the allegedly suppressed evidence was material in any event, as they merely speculate that the at-issue evidence was exculpatory without offering any facts to demonstrate a reasonable probability that disclosure would have favorably changed the outcome of their criminal proceedings. Accordingly, Plaintiffs fail to allege that the MSP committed *Brady* violations, and Defendant Noble is entitled to Eleventh Amendment immunity.

**E. The FAC Fails to Allege an Ongoing Violation of Federal Law**

Assuming *arguendo* that Plaintiffs plausibly allege past violations of *Brady* (they do not), their § 1983 claim still fails because the FAC does not allege an ongoing violation of federal law; instead, the FAC only alleges past *Brady* violations. *See, e.g., Urella*, 682 F. Supp. 3d at 138 (dismissing claim against MCAD seeking to vacate lack of probable cause finding). Although the FAC alleges that the MSP failed to notify prosecuting agencies about the existence of secret recordings in 181 criminal cases, Appendix, at p. 17, it does not allege that the MSP continues to commit similar *Brady* violations. "Despite the characterization in the complaint that it seeks injunctive relief to remedy an ongoing violation, in fact the [Plaintiffs' criminal prosecutions] ha[ve] concluded, and all of the relief [they seek are] actually retrospective, not prospective." *Urella*, 682 F. Supp. 3d at 138. Since the FAC does not allege that the MSP continues to commit *Brady* violations, and "suits that seek redress of past wrongs are . . . barred by the Eleventh Amendment," Plaintiffs' § 1983 claim should be dismissed on sovereign immunity grounds. *See Hootstein*, 670 F. Supp. 2d at 114. *See also Ayyadurai v. Galvin*, 560 F. Supp. 3d 406, 411 (D. Mass. 2021) (dismissing claim seeking a remedy for an alleged past violation of federal law).

## II. PLAINTIFFS LACK STANDING TO PURSUE THEIR 42 U.S.C. § 1983 CLAIM

Even if the Court assumes that Plaintiffs have sufficiently alleged that the MSP continues to commit *Brady* violations, Plaintiffs' claim is still subject to dismissal because they lack standing to seek their sought after relief.

The Supreme Court has stated that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 37 (1976). "The concept of standing is part of this limitation." *Id*. A plaintiff filing suit in federal court "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009), citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

To have standing to seek prospective injunctive relief, Plaintiffs are required to demonstrate: (1) that they are under threat of suffering "injury in fact" that is concrete and particularized; (2) the threat must be actual and imminent, not conjectural or hypothetical; (3) it must be fairly traceable to the challenged action of the defendant; and (4) it must be likely that a favorable decision will prevent or redress the injury." *Summers*, 555 U.S. at 493; citing *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–181 (2000).

Plaintiffs lack standing because they cannot meet the first two elements: they cannot demonstrate that they are under an actual or imminent threat of suffering a concrete and particularized "injury in fact." Plaintiffs' criminal cases related to this litigation were dismissed, meaning "the prospect of future injury rests on the [extreme un]likelihood that [Plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to" *Brady* violations. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Plaintiffs do not appear to challenge the underlying validity of the criminal statutes they were charged under, thus the question is "whether any perceived threat to [Plaintiffs] is sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses, in which event they . . . will be affected by" *Brady* violations. *Id*. at 496-97. However, it is black-letter law that attempting to anticipate whether they will again be charged "takes us into the area of speculation and conjecture." *Id*. at 497. This is because courts "assume that [Plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by [MSP]." *Id*.

Despite the prospect of Plaintiffs being subjected to the same alleged constitutional violations being per se speculative and conjectural, the District Court concluded that Plaintiffs had standing to sue the MSP in federal court in direct

conflict with binding Supreme Court precedent. Specifically, the District Court stated in its ruling, "MSP's past alleged injuries against Plaintiffs do not offer Plaintiffs any protection from the same conduct being repeated against them. To an MSP officer in the field, Plaintiffs are like any other member of the public, and until MSP unequivocally terminates the Callyo app recording features, Plaintiffs and putative class members could be subject to the same practices again." *See* Addendum, at p. 42. However, the Supreme Court in *City of Los Angeles v. Lyons* used this same line of reasoning to explain why Adolph Lyons *did not* have standing to seek an injunction prohibiting the LAPD from using chokeholds. 461 U.S. 95, 111 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional.").

In *Lyons*, the Supreme Court stated that the fact that Adolph Lyons may have been illegally choked by the LAPD during a traffic stop "does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id*. at 105. Indeed, Lyons went even further and alleged that the LAPD routinely applied

chokeholds in situations where they were not threatened, which the Supreme Court stated "falls far short of the allegations that would be necessary to establish a case or controversy between these parties." *Id*.

The instant facts fall squarely within the Supreme Court's holding in *Lyons*. Here, Plaintiffs allege that they were arrested, charged with criminal offenses, and subjected to *Brady* violations. *See* Appendix, at pp. 16-17, 21, 24, 36-38. Their criminal cases have been dismissed. Thus, to have standing to sue the MSP, Plaintiffs would need to plausibly allege that (1) they will be surreptitiously recorded without a warrant, arrested and charged by the MSP for committing criminal offenses; and then make the "incredible assertion that" (2) when they do, the MSP will subject them to similar *Brady* violations because *all* MSP police officers *always* commit *Brady* violations. *Lyons*, 461 U.S. at 105-06. As previously stated, attempting to ascertain whether and when Plaintiffs will commit and be charged with a crime is necessarily speculative and conjectural. *O'Shea*, 414 U.S. at 676.

Moreover, the unlikelihood of Plaintiffs being subjected to the same *Brady* violations again under the same circumstance is apparent, even based on the four corners of the FAC.[7] The FAC alleges that the MSP investigated its own actions to

---

[7] Notably, Plaintiff Courtemanche also represented in a motion to suppress that he received the at-issue recording of him during his criminal prosecution. *See* Appendix, p. 70.

determine whether members of the MSP failed to notify prosecuting agencies about the existence of the alleged at-issue recordings. *See* Appendix, at pp. 21-23, 42-54. Plaintiffs also allege that in a PowerPoint slide titled "Lessons Learned from the Callyo Audit," the MSP admitted to poor case management practices and a lack of understanding about responsibilities pertaining to evidence identification and production. *Id*. at 22, 54. Indeed, the memoranda attached to FAC, sent by the MSP's Division of Investigative Services to then MSP Superintendent John E. Mawn Jr., discussed criminal cases where alleged covert recordings had not been produced contain the footer "DA Discovery Packet 5 (10-26-23)." *Id*. at 42-52. For similar violations to occur again, not only would the Court have to assume that Plaintiffs will be arrested again under similar circumstances, but the Court would also need to assume that the MSP will have similar recordings, yet fail to produce them to prosecuting agencies, and that the prosecuting agencies, with knowledge of these alleged *Brady* violations occurring in the past, would still move forward with trying Plaintiffs without receiving the recordings. As the likelihood of such alleged violations recurring is per se speculative and conjectural, Plaintiffs lack standing. *See also Urella*, 682 F. Supp. 3d at 138 (dismissing claim seeking injunction against MCAD for lack of standing where there were no facts that suggested that the plaintiff would realistically be threatened with repetition of her experience with the MCAD).

The standing analysis in this matter is also analogous to *Broam v. Bogan*, No. CVN000389ECRRAM, 2004 WL 7334393 (D. Nev. July 29, 2004), where the United States District Court for the District of Nevada correctly held that plaintiffs lacked standing to seek injunctive relief due to alleged *Brady* violations. There, the plaintiffs alleged that a county maintained a policy of deliberately withholding exculpatory information from criminal defendants prosecuted in the county and sought a ruling enjoining the county from continuing its alleged policy of intentionally and deliberately withholding exculpatory information from criminal defendants. *Id*. at \*10. The court, citing *Lyons*, held that the plaintiffs' allegations that the county violated their constitutional rights in their prior criminal cases against them did nothing to establish a real and immediate threat that those constitutional rights would again be visited upon the plaintiffs. *Id*. at \*11. To have standing, the court correctly stated that not only would plaintiffs have needed to allege that they would be arrested and tried for a crime in the same county, but also that all county deputy sheriffs and district attorneys always withhold exculpatory evidence from criminal defendants, which they did not and could not do. *Id*. As previously discussed, an identical analysis applies to these facts. As Plaintiffs lack standing to sue Defendant Noble in federal court, Plaintiffs' FAC should be dismissed with respect to Defendant Noble.

**CONCLUSION**

As demonstrated, the District Court erred in concluding that Defendant Noble is not entitled to Eleventh Amendment immunity from Plaintiffs' § 1983 claim because the FAC fails to allege an ongoing violation of federal law. At most, the FAC alleges that the MSP violated federal and state law in the past. Further, Plaintiffs improperly seek an injunction that would require the MSP to conform its activities to state law, in violation of the Eleventh Amendment. Accordingly, the District Court's ruling should be reversed with an order instructing the District Court to dismiss Plaintiffs' § 1983 claim.

Even if the Court assumes that Defendant Noble is not entitled to Eleventh Amendment immunity, Plaintiffs' § 1983 claim still fails because they lack standing to sue Defendant Noble in federal court, and the District Court erred in concluding otherwise. The FAC does not sufficiently allege that Plaintiffs are likely to be subjected to the same alleged constitutional violations in the future, and thus, they lack standing to pursue prospective injunctive relief against the MSP. The District Court's ruling should be reversed.

Respectfully submitted,

COLONEL GEOFFREY D. NOBLE
Superintendent of the
Massachusetts State Police, in his
Official Capacity,

By His Attorney,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL


*/s/ Jeffrey T. Collins*_____
Jeffrey T. Collins
First Circuit Bar No. 1139870
Special Assistant Attorney General
Robert Papandrea
First Circuit Bar No. 1216847
MORGAN, BROWN & JOY, LLP
28 State Street, 16th Floor
Boston, MA  02109-2605
(617) 523-6666
jcollins@morganbrown.com
rpapandrea@morganbrown.com

Dated: October 2, 2025

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1. I hereby certify that this brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 6,909 words. Inclusive of all words herein, this brief contains 7,833 words.
2. I hereby certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.0.

*/s/ Jeffrey T. Collins*_____
Jeffrey T. Collins

# CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2025, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the CA01 Notice of Docket Activity and paper copies will be sent to those indicated as nonregistered participants.

*/s/ Jeffrey T. Collins*_____
Jeffrey T. Collins

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
Case No. 25-1386

_____

JASON COURTEMANCHE, BRETT FORESMAN, JUAN RIOS, and DENNIS
WILLIAMS, on behalf of themselves and all others similarly situated,
Plaintiffs – Appellees,

v.

GEOFFREY D. NOBLE, in his official capacity as Superintendent of the
Massachusetts State Police
Defendant – Appellant

and

MOTOROLA SOLUTIONS, CALLYO 2009 CORP. and SHI INTERNATIONAL
CORP.,
Defendants.

_____

On Interlocutory Appeal from an Order of the United States District Court
for the District of Massachusetts

_____

**APPELLANT'S ADDENDUM**

_____

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*
Jeffrey T. Collins, 1st Cir. No. 1139870
*Special Assistant Attorney General*
Robert Papandrea, 1st Cir. No. 1216847
MORGAN, BROWN & JOY, LLP
28 State Street, 16th Floor
Boston, MA 02109-2605
(617) 523-6666
jcollins@morganbrown.com
rpapandrea@morganbrown.com

Dated: October 2, 2025              *Attorneys for Appellants*

# **ADDENDUM**
# **TABLE OF CONTENTS**

**Page(s)**

Memorandum and Order on Defendants' Motion to Dismiss………………1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JASON COURTEMANCHE, BRETT | **)** | |
| FORESMAN, JUAN RIOS, AND DENNIS | **)** | |
| WILLIAMS, on behalf of themselves and | **)** | |
| all others similarly situated, | **)** | **Civil No. 4:24-cv-40030-MRG** |
| | **)** | |
| **Plaintiffs,** | **)** | |
| | **)** | |
| v. | **)** | |
| | **)** | |
| MOTOROLA SOLUTIONS, INC., | **)** | |
| CALLYO 2009 CORP., SHI | **)** | |
| INTERNATIONAL CORP., and | **)** | |
| COLONEL JOHN E. MAWN, JR.,[1] Interim | **)** | |
| Superintendent of the Massachusetts State | **)** | |
| Police, in his official capacity, | **)** | |
| | **)** | |
| **Defendants.** | **)** | |
| | **)** | |

**MEMORANDUM AND ORDER**

**GUZMAN, J.**

Plaintiffs, Jason Courtemanche, Brett Foresman, Juan Rios, and Dennis Williams, individually and on behalf of a class or classes of similarly situated persons (hereinafter "Plaintiffs") bring this action against Defendants, Motorola Solutions, Inc. ("Motorola Solutions") and Callyo 2009 Corp. ("Callyo," together with Motorola Solutions, "Motorola"), SHI International Corp. ("SHI")[2], and Colonel Geoffrey D. Noble, Superintendent of the Massachusetts

---

[1] Plaintiffs filed their complaint against John E. Mawn, Jr. ("Mawn"), who was interim Superintendent of the Massachusetts State Police at the time. Since Mawn is no longer Superintendent, this Court automatically substituted Geoffrey D. Noble, his successor in interest, for purposes of the official capacity claims. [ECF No. 44].

[2] Claims against SHI were previously dismissed by this Court. [ECF No. 68].

State Police ("MSP"), in his official capacity ("Defendant Noble"). Plaintiffs' Amended Complaint alleges that MSP, utilizing Motorola products/intercepting devices, unlawfully recorded Plaintiffs and failed to disclose these recordings in Plaintiffs' subsequent criminal prosecutions. [Am. Compl., ECF No. 8 ¶¶ 1–4]. Plaintiffs bring claims under 42 U.S.C. § 1983 ("Section 1983), Mass. Gen. Laws ch. 93A ("93A"), the Massachusetts Wiretap Act, Mass. Gen. Laws ch. 272, § 99 ("Wiretap Act"), and common law breach of warranty theories. [Am. Compl. ¶¶ 63–110, 122–84]. Pending before the Court are Defendants' Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), [ECF Nos. 29, 53].

For the reasons that follow, Defendants' Motions to Dismiss are **<u>GRANTED IN PART</u>** and **<u>DENIED IN PART</u>**, as summarized below:

| Count # | Cause of Action | Outcome of Motion |
|---|---|---|
| I | Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983 (against Motorola and Callyo) | **GRANTED** |
| II | Violation of M.G.L. c. 93A for Unfair and Deceptive Acts or Practices (against Motorola and Callyo) | **DENIED** |
| III | Breach of Express Warranty (against Motorola and Callyo) | **GRANTED** |
| IV | Breach of Implied Warranty of Merchantability (against Motorola and Callyo) | **DENIED** |
| V | Breach of Implied Warranty of Fitness for Particular Purpose (against Motorola and Callyo) | **GRANTED** |
| VII | Violation of M.G.L. c. 272 § 99 (Wiretap Act) (against Motorola and Callyo) | **DENIED** |
| VIII | Violation of M.G.L. c. 272 § 99 (Wiretap Law) (against Defendant Noble/MSP) | **MOOT** |
| IX | Violation of Constitutional Rights (Sixth and Fourteenth Amendment) under 42 U.S.C. § 1983 (against Defendant Noble/MSP) | **DENIED** |

I.    <u>**BACKGROUND**</u>[3]

Motorola Solutions, a foreign corporation registered to do business in the Commonwealth of Massachusetts, manufactures and sells mobile devices and security software to a variety of consumers. [Am. Compl. ¶ 25]. Callyo is a wholly owned subsidiary of Motorola Solutions. [<u>Id.</u> ¶ 20]. This case involves two Motorola products: the "10-21" and "Mobile Body Bug" applications (together, the "Callyo apps") that Motorola sells exclusively to police departments and other law enforcement agencies to assist with investigations and community interactions. [<u>Id.</u> ¶¶ 25, 28; ECF No. 30 at 8[4]]. These applications, when coupled with a mobile telephone, are capable of intercepting, transmitting, receiving, amplifying, recording, storing, and reproducing oral communications. [Am. Compl. ¶ 28]. The two applications facilitate surreptitious recordings as they record without notice as a default setting. [<u>See</u> <u>id.</u> ¶ 66]. Motorola's marketing of 10-21 states that it is "hidden in plain sight technology [that] makes body wires a thing of the past" and that it comes with a "Conceal Camera Preview" feature which "[d]isables your video preview while streaming to avoid detection." [<u>Id.</u> ¶¶ 80–81].

Since in or around 2017, Motorola marketed, manufactured, sold, or otherwise procured Motorola "intercepting devices" and data-storage services to MSP. [<u>Id.</u> ¶ 29, 31]. Motorola adds that it also provides customers like MSP with a license and access to an online database to store, review, reproduce, and share secret recordings of oral communications. [<u>Id.</u> ¶¶ 31; ECF No. 30 at 8]. MSP granted Motorola a royalty-free, worldwide, non-exclusive license to use MSP's intercepted oral communications. [Am. Compl. ¶ 54]. This license allowed Motorola to process,

---

[3] On a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the complaint and drawing all reasonable inferences in the Plaintiffs' favor. <u>See</u> <u>Morales-Tañon v. P.R. Elec. Power Auth.</u>, 524 F.3d 15, 17 (1st Cir. 2008).

[4] All pagination refers to ECF pagination rather than page numbers in the documents.

host, cache, store, reproduce, copy, modify, combine, analyze, and create derivative works from MSP's intercepted oral communications, and to communicate, transmit, and distribute these intercepted oral communications to third parties. [Id.]

The named Plaintiffs are four individuals residing in Worcester County, Massachusetts, who allege that, in connection with its police investigations, MSP used the Motorola products to secretly record Plaintiffs' oral communications without their consent and without first obtaining a warrant. [Id. ¶¶ 35–46]. Since in or about 2017, in at least 181 known situations, MSP brought criminal charges against individuals who they had secretly recorded using Motorola applications. [Id. ¶ 4]. These secret recordings were never produced to prosecuting agencies, and the existence of these secret recordings was not disclosed to Plaintiffs until March of 2023. [Id.]

During Plaintiffs' respective criminal cases, MSP failed to notify the prosecuting agencies about the existence of the secretly recorded statements. [Id. ¶ 4]. After a series of evidentiary hearings, in July 2024, Judge LoConto of the Fitchburg District Court granted a motion for a new trial brought by some of the 181 defendants, finding that MSP officers utilized the Callyo apps for evidentiary purposes and their secret recordings of defendants violated the Wiretap Act. [ECF No. 57-3 (Mem. & Order, Commonwealth v. Aponte, No. 2216CR000495, (Mass. Dist. Ct. July 8, 2024)].[5] In their criminal cases, Plaintiffs paid court costs, probation fees, mandatory assessments, fines, restitution, license-reinstatement fees, and other monies, may have performed community service in lieu of payments to the court, and lost property that was seized. [Am. Compl. ¶ 6].

---

[5] The Court takes judicial notice of this action and its filings. "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Rodi v. S. New Eng. Sch. of L., 389 F.3d 5, 19 (1st Cir. 2004) (quoting Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990))). Further, "the jurisprudence of Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice." Id. at 12 (citing In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15-16 (1st Cir. 2003)).

In or about 2017, Motorola met with representatives of MSP concerning its sale of intercepting devices and data-storage services to MSP. [Id. ¶ 50]. At these meetings, MSP informed Motorola that its intercepting devices, i.e. the Callyo apps, failed to comply with the Massachusetts two-party consent law (the Wiretap Act). [Id. ¶ 51]. Motorola did not modify the Callyo apps to bring them into compliance with Massachusetts law and continued to sell the apps to MSP. [Id. ¶ 52]. At a hearing on the Defendants' motions to dismiss, held on February 28, 2025, counsel for Motorola asserted Motorola declined to make any changes to its products after the 2017 meetings with MSP because it did not believe its products were in violation of the law. [Hr'g Tr. 21:3-9, ECF No. 70]. In or about June 2023, MSP's Division of Investigative Services conducted an audit of historic investigative recordings to determine whether members of the MSP failed to notify prosecuting agencies about the existence of such recordings that were made in furtherance of criminal investigations. [Am. Compl. ¶ 34]. As noted above, at least one Massachusetts court has found that MSP officers did in fact engage in such conduct. See Mem. & Order, Commonwealth v. Aponte, No. 2216CR000495 [ECF No 57-3]. In essence, Plaintiffs allege that the MSP, aided by Motorola, carried-out surreptitious audio and video recordings of Plaintiffs, in violation of their rights.

Plaintiffs filed the initial complaint on February 22, 2024. [ECF No. 1]. Plaintiffs then filed the present Amended Complaint on April 17, 2024. [Am. Compl.]. On February 27, 2025, this Court granted SHI's motion to dismiss [ECF No. 31] and dismissed all claims against SHI (Counts I, II, IV, VI and VII). [ECF No. 68]. Plaintiffs have eight surviving claims against Defendants. Six of the claims are against Motorola Solutions and Callyo and include conspiracy to violate Plaintiffs civil rights under 42 U.S.C. § 1983 (Count I), unfair and deceptive acts or practices under Chapter 93A (Count II), breach of express warranty (Count III), breach of implied warranty of

merchantability (Count IV), breach of implied warranty of fitness for particular purpose (Count V) and violations of Massachusetts Wiretap Act (Count VII). Plaintiffs also advance two claims against Defendant Noble: violations of Massachusetts Wiretap Act (Count VIII) and violations of Plaintiffs' constitutional rights secured by the Fifth, Sixth, and Fourteenth amendments under 42 U.S.C. § 1983 (Count IX).

Presently before the Court are Motorola Solutions, Callyo, and Defendant Noble's motions to dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [ECF Nos. 29, 53]. On November 27, 2024, the Plaintiffs voluntarily dismissed their Wiretap Act Violation Claim against Defendant Noble. [ECF No. 57 at 2].

## II.   LEGAL STANDARDS

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ayyadurai v. Galvin, 560 F. Supp. 3d 406, 410 (D. Mass. 2021) (quoting Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995)). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995), cert. denied, 515 U.S. 1144 (1995)). "If the party fails to demonstrate a basis for jurisdiction, the district court must grant the motion to dismiss." Id. The district court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor" when ruling on a Rule 12(b)(1) motion. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citing Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)). A plaintiff cannot assert a proper jurisdictional basis "merely on unsupported conclusions or interpretations

6

of law" or "[s]ubjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts[.]" Murphy, 45 F.3d at 522 (citations omitted). In evaluating whether the party has met its burden of proof, the court "may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations." Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000).

"'A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is appropriate when the plaintiff lacks standing to bring the claim.'" Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 894 F.Supp.2d 144, 150 (D. Mass. 2012) (quoting Edelkind v. Fairmont Funding, Ltd., 539 F.Supp.2d 449, 453 (D. Mass. 2008)). "[A] plaintiff must have standing to bring each and every claim [they] assert[]." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (citing Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006). "The Constitution limits the judicial power of the federal courts to actual cases and controversies" and the standing requirement stipulates that "[a] case or controversy exists only when the party soliciting federal court jurisdiction (normally, the plaintiff) demonstrates . . . a personal stake in the outcome of the controversy . . . ." Katz, 672 F.3d at 71 (first citing U.S. Const. art. III, § 2, cl. 1; then quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

"To satisfy the personal stake requirement, a plaintiff must establish each part of a familiar triad: injury, causation, and redressability." Katz, 672 F.3d at 71 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). The injury in fact must be "'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" Id. (quoting Lujan, 504 U.S. at 560). "The requirement of an actual or imminent injury ensures that the harm has either happened or is sufficiently threatening; it is not enough that

7

the harm might occur at some future time. Id. (citing Lujan, 594 U.S. at 564). The element of causation requires the plaintiff to show a "sufficiently direct causal connection," between the "injury and the conduct complained of" such that the injury is "fairly . . . trace[able] to the challenged action of the defendant." Id. (citing Lujan, 504 U.S. at 560). "Because the opposing party must be the source of the harm, causation is absent if the injury stems from the *independent* action of a third party." Katz, 672 F.3d at 72–73 (emphasis added) (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41–42 (1976)). The final element, redressability, requires the plaintiff to "show that a favorable resolution of her claim would likely redress the professed injury." Katz, 672 F.3d at 72.

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). "In resolving a motion to dismiss, a court should employ a two-step approach." Ocasio-Hernández v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). "It should begin by identifying and disregarding statements in the complaint that merely offer 'legal conclusion[s] couched as ... fact[ ]' or '[t]hreadbare recitals of the elements of a cause of action.'" Id. (alterations in original) (quoting Ashcroft v. Iqbal, 566 U.S. 662, 678 (2009)). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Id. Dismissal is appropriate if

8

the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). Still, Plaintiffs' burden is relatively low as "[a] court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. . . . Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw." Afrasiabi v. Massachusetts, 272 F. Supp. 3d 256, 260 (D. Mass. 2017) (citing Ocasio-Hernández, 640 F.3d at 13).

## III.    DISCUSSION

### A.    Count I: Plaintiffs' Section 1983 Claim Against Motorola and Callyo

Plaintiffs' Section 1983 claim must be dismissed under Rule 12(b)(6) because they have failed to demonstrate that Motorola was the equivalent of a state actor.

First, the Court responds to Motorola's argument that Plaintiffs lack standing for their Section 1983 claim against the companies because they fail to allege an injury that is fairly traceable to Motorola's conduct. [ECF No. 30 at 9–19]. At the motion hearing on this matter, the Court indicated preliminarily that it agreed with this proposition. However, upon further review, the Court finds that Plaintiffs have sufficiently alleged a cognizable injury for their Section 1983 claim against Motorola.

As with any claim, Plaintiffs must establish that they have standing to bring a Section 1983 claim against Motorola by demonstrating injury, causation, and redressability. Plaintiffs argue that they have suffered injury through deprivation of their due process rights under the Fifth and Fourteenth Amendments. [Am. Compl. ¶¶ 73, 75]. Specifically, Plaintiffs' Amended Complaint can be construed to allege that they were prevented from investigating and implementing vital

9

defenses to their criminal cases because MSP used intercepting devices to secretly record them, used the recordings to bring criminal charges against them, then failed to produce these secret recordings during the Plaintiffs' criminal trials. [Id. ¶¶ 2, 4–5]. Plaintiffs also assert they have suffered losses of liberty and property. [Id. ¶¶ 6–8].

Plaintiffs' injuries for the Section 1983 claim are fairly traceable to Motorola's conduct because Motorola's products and services are the but-for cause of Plaintiffs' injuries, and causation is not broken by the intervening actions of MSP since MSP's violations of Plaintiff's rights were reasonably foreseeable to Motorola. Motorola argues that that MSP's actions of recording Plaintiffs without consent or a warrant and MSP's subsequent criminal charges against Plaintiffs are intervening causes that break the chain of proximate causation. [ECF No. 30 at 17–19]. While in many cases, "[w]hen the injury alleged is the result of actions by some third party, not the defendant, the plaintiff cannot satisfy the causation element of the standing inquiry." Katz, 672 F.3d at 76 (citing Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125 ,141–42 (2011)). The First Circuit is clear that "[a]n actor is responsible for those consequences attributable to *reasonably foreseeable* intervening forces, including the acts of third parties," Medeiros v. Town of S. Kingstown, 821 F. Supp. 823, 828 (D.R.I. 1993) (quoting Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989) (emphasis added). The issue comes down to a determination of proximate cause, which, "under § 1983[,] [is] governed by federal standards, which incorporate common law tort principles." Id. (citing Gutierrez-Rodriguez, 882 F.2d at 561). The First Circuit has discussed the import of intervening causes in a Section 1983 action:

> A negligent defendant will not be relieved of liability by an intervening cause that was *reasonably foreseeable*, even if the intervening force may have 'directly' caused the harm. An unforeseen and abnormal intervention, on the other hand, breaks the chain of causality, thus shielding the defendant from liability.

Appellant's Addendum, Page 10

Gutierrez-Rodriguez, 882 F.2d at 561 (internal quotation marks and citations omitted) (emphasis added).

Here, the Court agrees that MSP's conduct was an intervening force but disagrees with Motorola that it relieves the companies of any liability under Section 1983 because Plaintiffs plausibly allege that MSP's conduct was reasonably foreseeable to Motorola. The key fact is the 2017 meeting between MSP and Motorola where MSP allegedly told Motorola that its applications were in violation of the Wiretap Act. [See Am. Compl. ¶¶ 50–52]. In the Amended Complaint, Plaintiffs allege that, after the meeting, Motorola "failed or refused to bring its intercepting devices into compliance with Massachusetts law, and it continued to sell its non-compliant intercepting devices to MSP." [Id. ¶ 52]. Counsel for Motorola did not dispute this statement during the hearing on this motion. Instead, he relied on Motorola's refusal to change its practices after the meeting to show that Motorola and MSP were not acting as part of a conspiracy to violate Plaintiff's rights because they disagreed on this issue. What Motorola does dispute is that the 2017 meeting provided it with enough information about MSP's conduct that it would have been aware that MSP was committing constitutional violations using the Callyo apps. [See Hr'g Tr. 19:21–21:2]. Drawing all inferences in favor of the Plaintiffs, the Court finds that it was reasonably foreseeable to Motorola that MSP officers would violate Plaintiffs rights because Plaintiffs allege that MSP relayed to Motorola that officers' conduct while using the apps' default settings was in direct violation of the Wiretap Act. It was likewise foreseeable that MSP officers would use the illegal recordings in bringing criminal charges against defendants like Plaintiffs because the main function of MSP is to investigate crime and enforce criminal law. That being said, "the First Circuit has made it clear that issues of foreseeability are generally for the jury." Medeiros, 821 F. Supp. at 828 (citing Springer v. Seaman, 821 F.2d 871, 876 (1st Cir. 1987)). The Court cannot at this

early stage of the case state that Plaintiffs would be unable to prove a set of facts that will provide a jury question on the issue of foreseeability.

However, Plaintiffs Section 1983 claim against Motorola fails for a different reason: Plaintiffs have not shown that Motorola acted under the color of state law.  Section 1983 "is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights, such as . . . the Fourteenth Amendment's right to procedural due process." Gagliardi, 513 F.3d at 306. To succeed on a Section 1983 claim, a plaintiff must show that defendants acted under the color of state law, and that his or her conduct deprived plaintiff of rights secured by the Constitution or by federal law. Id. (citing Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)). For a private entity, such as Motorola, to have acted "under color of state law, their actions must be 'fairly attributable to the State.'" Estades-Negroni v. CPC Hosp., 412 F.3d 1, 4 (1st Cir 2005) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). To determine if a private entity's action is attributable to the state, the First Circuit has articulated "three tests: the public function test, the joint action/nexus test, or the state compulsion test." Alberto San Inc. v. Consejo De Titulares Del Condominio San Alberto, 522 F.3d 1, 4 (1st Cir. 2008) (citing Estades-Negroni, 412 F.3d at 5).

Plaintiffs advance their Section 1983 claim against Motorola under the joint action/nexus test. Plaintiffs' Amended Complaint alleges that Motorola and Callyo "acted under color of state law when they willfully participated in a *joint action* with MSP to deprive Plaintiffs of their constitutional rights." [Am. Compl. ¶ 71 (emphasis added)]. Under the joint action/nexus test, the private party may be viewed as a state actor only if "the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'" Estades-Negroni, 412 F.3d at 5 (alterations

12

in original) (quoting Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999)). Although the focus is on the totality of the circumstances, "the case law suggests some factors to which courts typically attach special weight" such as (a) whether the private actor "is (or is not) independent in the conduct of its day-to-day affairs," (b) the "circumstances surrounding a private entity's use of public facilities" and (c) whether the State and private actor "knowingly shared in the profits" created by the conduct at issue. Perkins v. Londonderry Basketball Club, 196 F.3d 13, 21 (1st Cir. 1999).

In support for their joint action theory, Plaintiffs allege that Motorola and Callyo "created, marketed and/or sold" applications to the MSP and provided an online database where the recordings were stored. [Am. Compl. ¶ 74, 31]. Further, Plaintiffs emphasize that as part of Motorola's contract with MSP, MSP granted Motorola a "royalty-free, non-exclusive license" that allowed Motorola to use the MSP recordings stored by Motorola's database for its own financial gain, such as by using the recordings to create derivative works and products. [Id. ¶ 54; ECF No. 47 at 12]. At baseline, Plaintiffs' allegation that Motorola is equivalent to a state actor because it has a contract with MSP is insufficient to save their claim: "[a] private party cannot be transformed into a state actor simply because it is paid with government funds for providing a service." Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st. Cir 2011). Here, the relationship between the MSP and Motorola was a business contract where the state paid Motorola for their products and services. There are no allegations in the Amended Complaint that the relationship between Motorola and MSP was exclusive nor that Motorola's daily operations revolved solely around MSP. There is nothing in the Amended Complaint to establish that Motorola and MSP's contract "caused the Commonwealth to insinuate itself into the day-to-day operations" of Motorola. See Santiago, 655 F.3d at 71 ("The 'most salient' factor in [the joint action] determination 'is the extent to which the

13

private entity is (or is not) independent in the conduct of its day-to-day affairs.'" (quoting <u>Perkins</u>, 196 F.3d at 21)). Further, Plaintiffs allegations surrounding the Motorola database that is used to store MSP's recordings indicate this connection with MSP was also no more than a routine business service. Although Plaintiffs discuss a potential licensing agreement that would allow Motorola to "review, reproduce, analyze, and create derivative works and products," [Am. Compl. ¶ 54], there are no facts in the Amended Complaint that demonstrate that Motorola ever took any actions or made any profits with the recordings made by MSP, nor that Motorola shared any purported profits from the license agreement with the Commonwealth or the MSP. <u>See</u> <u>Santiago</u>, 655 F.3d at 72 ( a "state's sharing of profits generated from the private party's rights-depriving conduct" is a factor in the joint action analysis). Similarly, the Amended Complaint makes no allegations that Motorola ever used any of the State's public facilities or publicly owned equipment. <u>See</u> <u>id.</u> at 71. There is a lack of factual allegations demonstrating that there was a joint action/nexus between the Motorola and the state, and "[o]n this record, it cannot plausibly be said that the private defendants and the Commonwealth were so entangled as to render the private defendants state actors." <u>See</u> <u>id.</u> at 72.

For the reasons described above, the motion to dismiss Plaintiffs' Section 1983 claim (Count I) against Motorola and Callyo is **<u>GRANTED.</u>**

### B.  <u>Supplemental Jurisdiction</u>

This matter is before the Court under federal question jurisdiction, with Plaintiff's Section 1983 claims providing the jurisdictional hook. <u>See</u> 28 U.S.C. § 1331; [Am. Compl. ¶¶ 63–76, 154–184]. While the Court dismissed Plaintiffs' Section 1983 claim against Motorola, as discussed below, Plaintiffs' Section 1983 claim against MSP survives MSP's motion to dismiss. The Section 1983 claim against MSP continues to provide the federal question necessary for jurisdiction under

14

28 U.S.C. § 1331. "When a federal court may validly exercise federal-question jurisdiction over at least one claim, it may also exercise supplemental jurisdiction over pendent state-law claims." Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 19 (1st Cir. 2018) (citing Cavallaro v. UMass Mem'l Healthcare, Inc., 678 F.3d 1, 9 (1st Cir. 2012)). When a federal claim is pending before a court, that court has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). In other words, supplemental jurisdiction over state-law claims is appropriate where the state-law claims, and the anchoring federal claim arise from "the same nucleus of operative facts." Lawless, 894 F.3d at 19; Cavallaro, 678 F.3d at 9. "This remains true even when the federal claims are against a separate party." Audette v. Carrillo, No. 15-cv-13280-ADB, 2017 U.S. Dist. LEXIS 37962, at *8 (D. Mass. Mar. 16, 2017) (citing Irizarry-Santiago v. Essilor Indus., 929 F. Supp. 2d 30, 34 (D.P.R. 2013) (exercising supplemental jurisdiction over one defendant is appropriate when the claims arose from the same "nucleus" of facts as federal claims against another defendant)).

Plaintiffs' claims, collectively, arise from the same nucleus of operative fact that begins with Motorola's manufacturing of the Callyo apps and its contract with MSP and extends to MSP's alleged violations of Plaintiffs' constitutional rights through usage of the Callyo apps. With Plaintiffs' Section 1983 claim against MSP remaining, the Court has supplemental jurisdiction over the state-law claims against Motorola pursuant to 28 U.S.C. § 1367.

C.   **Count II: Plaintiffs' Chapter 93A Claim Against Motorola and Callyo**

Chapter 93A prohibits "'[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Valley Children's Hosp. v. Athenahealth, Inc., No. 22-cv-10689-DJC, 2023 WL 6065800 at *2 (D. Mass. Sept. 18, 2023) (quoting Mass.

15

Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005)); Mass. Gen. Laws ch. 93A, § 2(a). Although "indirect purchasers can bring a cause of action under [Chapter] 93A," Ciardi v. F. Hoffmann La Roche, Ltd., 762 N.E.2d 303, 313 (Mass. 2002), to properly allege a claim under Chapter 93A § 9, a plaintiff must demonstrate that "some business, commercial, or transactional relationship" exists between the plaintiff and the defendant. Ryan v. Greif, Inc., 708 F. Supp. 3d 148, 179 (D. Mass. 2023) (quoting Steinmetz v. Coyle & Caron, Inc. (In re Steinmetz), 862 F.3d 128, 141 (1st Cir. 2017)). While consumer actions under § 9 have a "lower burden in establishing a commercial relationship than an action between two businesses under [§] 11[,]" a commercial link must still exist between the plaintiff consumer and the defendant engaged in commerce. Id. (citing Begelfer v. Najarian, 409 N.E.2d 167, 190–191 (1980)).

Further, to succeed on a Chapter 93A claim, the Plaintiffs "must show '(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury.'" Gottlieb v. Amica Mut. Ins. Co., 57 F.4th 1, 10 (1st Cir. 2020) (quoting Tomasella v. Nestle USA Inc., 962 F.3d 60, 71 (1st. Cir. 2020)). "[I]n order to obtain relief under [Chapter 93A] for either an unfair or deceptive act, plaintiffs must show that they were injured by the conduct at issue, and that the conduct caused some loss beyond the mere fact that a violation occurred." Gottlieb, 57 F.4th at 10.

As discussed below, the Court finds Plaintiffs have adequately alleged each element for their 93A claim. To start, the Court finds Plaintiffs have established that Motorola engaged in an unfair act or practice in Massachusetts commerce in two ways: first, by promoting and selling a product that foreseeably encouraged illegal conduct, "i.e. the secret interception and recording of oral communications in Massachusetts," [Am. Compl. ¶ 79]; and second, under a theory of regulatory compliance where Plaintiffs allege that, after the 2017 meeting with MSP, Motorola

knowingly sold and marketed legally noncompliant products in the Commonwealth, and where, even after learning of its products' noncompliance with the Wiretap Act, Motorola failed to initiate a recall or otherwise modify the products to comply with the law, [Id. ¶¶ 50–52, 77–88].

When assessing whether a practice is unfair, the First Circuit directs this Court to consider "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Gottlieb, 57 F.4th at 9 (quoting Mass. Eye & Ear, 412 F.3d at 243 (alterations in original)). "If all three factors are present, the challenged conduct will surely violate [Chapter 93A] . . . ." Sinicrope v. Keller Indus., No. 95-30002-MAP, 1997 U.S. Dist. LEXIS 2877, at *16 (D. Mass. Mar. 13, 1997) (quoting PMP Assoc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)). The factors named by the First Circuit and state case law are articulated as discretionary (i.e. the court must "consider" the factors), and it is not settled law that all three factors are required to establish an unfair practice. Plaintiffs meet factors (1) and (2): Motorola's alleged conduct was within the penumbra of unfair conduct established by statute, namely the Wiretap Act, and once Motorola was put on notice of such by MSP in 2017, [Am. Compl. ¶ 50–52], it was unethical and unscrupulous for Motorola to continue to market and sell the Callyo apps without remedying the apps' noncompliance, despite notice that use of the apps was resulting in unlawful conduct due to its default setting of recording without notice.

Having established that Plaintiffs plausibly alleged that Motorola engaged in unfair conduct, the Court now turns to Plaintiffs' legal theory, which is recognized as a regulatory noncompliance theory. In Iannacchino, the Supreme Judicial Court of Massachusetts ("SJC") considered plaintiffs' 93A claim based on a theory of regulatory noncompliance. 888 N.E.2d 879

17

(Mass. 2008). The <u>Iannacchino</u> plaintiffs were a putative class of Massachusetts residents who owned vehicles produced by the defendant-auto manufacturer (Ford Motor Co., "Ford"), and claimed that the outside door handle systems in their vehicles were noncompliant with applicable federal safety standards. <u>Id.</u> at 882. The plaintiffs claimed that the Ford's alleged practice of knowingly manufacturing, offering for sale, and refusing to recall vehicles that did not comply with federal safety regulations was unfair or deceptive. <u>Id.</u> The plaintiffs also brought a claim for breach of implied warranty under the same theory. <u>Id.</u> In the case, the SJC noted that the Federal Safety Act, 49 U.S.C. § 30115(a), requires that all automobile manufacturers selling new cars in the United States certify that their products comply with federal safety standards. <u>Id.</u> at 886. In framing its analysis, the SJC noted "a claim, supported by sufficient factual allegations, that the plaintiffs own vehicles manufactured and sold by Ford as meeting required government safety standards; that the vehicle's door handles, as Ford knew, failed to comply with NHTSA safety standards; and that the noncompliance was not properly remedied, would support a cause of action under G. L. c. 93A, § 9." <u>Id.</u> As a result, the SJC reasoned that "the purchase price paid by the plaintiffs for their vehicles would entitle them to receive vehicles that complied with those safety standards or that would be recalled if they did not comply." <u>Id.</u> The SJC emphasized that particular consideration should be paid to the defendant-manufacturer's knowing sale of a product that was not in compliance with the law. <u>Id.</u> ("If Ford knowingly sold noncompliant (and therefore potentially unsafe) vehicles or if Ford, after learning of noncompliance, failed to initiate a recall and to pay for the condition to be remedied, the plaintiffs would have paid for more (viz., safety regulation-compliant vehicles) than they received."). Ultimately, the SJC concluded that plaintiffs' 93A claim failed because their complaint did not adequately allege that their vehicles actually failed to comply with the federal safety standards. <u>Id.</u> at 888. However, the SJC's

<div align="center">18</div>

articulation of what allegations would suffice to state a claim of unfair or deceptive conduct under a regulatory compliance theory stands, and this Court finds Plaintiffs' allegations meet this burden. Namely, Plaintiffs' state sufficient allegations to establish that Motorola's conduct in knowingly manufacturing, offering for sale, and refusal to recall its Callyo applications that did not comply with Massachusetts law was unfair.

Motorola argues that Plaintiff's assertion that the Callyo applications violate the Wiretap Act is negated by the fact that other jurisdictions with two-party consent laws like the Massachusetts Wiretap Act utilize these apps without similar legal challenges. [Hr'g Tr. 21:3–4]. "[W]hile adherence to industry standard or custom is one factor that can support a finding of no liability under Chapter 93A, . . . the existence of an industry-wide practice does not itself constitute a complete defense to a Chapter 93A claim." Blue Cross & Blue Shield v. AstraZeneca Pharms. LP (In re Pharm. Indus. Average Wholesale Price Litig.), 582 F.3d 156, 185 (1st Cir. 2009) (citing James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co., 112 F.3d 1240, 1251 (1st Cir. 1997); Commonwealth v. DeCotis, 316 N.E.2d 748, 753 (Mass. 1974)). Further, Motorola's potential liability here is premised on Motorola's conduct relating specifically to sales in the Commonwealth to MSP and is inherently fact-specific to the boundaries of this jurisdiction.

Regarding the requirement for a commercial relationship, plaintiffs suing under Chapter 93A Section 9 can include indirect purchasers of upstream defendants' products. Ciardi, 762 N.E.2d at 309-10; Moniz v. Bayer Corp., 484 F. Supp. 2d 228, 230 (D. Mass. 2007). "The language of G. L. c. 93A, §§ 1, 9(1), allows *any* person who has been injured by trade or commerce *indirectly* affecting the people of this Commonwealth to bring a cause of action." Ciardi, 762 N.E2d at 309 (emphasis in original). Furthermore, "there is no requirement of contractual privity between the plaintiff and the defendants under G. L. c. 93A, § 9." Id. at 310 (citing Kattar v. Demoulas, 739

19

Appellant's Addendum, Page 19

N.E.2d 246, 258 (Mass. 2000) ("Parties need not be in privity for their actions to come within the reach of c. 93A")). However, "even for a claim brought under section 9," "some business, commercial, or transactional relationship is required[.]" In re Steinmetz, 862 F.3d at 141.

Plaintiffs can meet their burden on the commercial relationship requirement because, although they are not direct purchases of Motorola's products, Chapter 93A permits a cause of action for cases where a defendant has an indirect effect on the people of the Commonwealth. In Ryan, this Court granted a motion to dismiss a 93A claim where the defendant "did not participate, directly or indirectly, in the marketing, production, or sale of [the unfair] products," nor did the defendant gain any benefit from another defendant's unfair and deceptive conduct. 708 F. Supp. 3d at 184. In that order, the Court distinguished the Ryan facts from the facts of Ciardi and Moniz. In this case, the facts are more analogous to those two cases, as compared to the facts of Ryan. Similarly to the defendant in Ciardi, Motorola manufactured, produced, distributed, and sold the products at issue. See Ciardi, 762 N.E.2d at 306. Further, in Moniz, the court found the requisite commercial relationship even where the defendants were upstream manufacturers of raw materials that were later incorporated into finished consumer goods by other industrial manufacturers. Moniz, 484 F. Supp. 2d at 230–31. Motorola is not only the upstream manufacturer of the products at issue here, it also directly engages in marketing and sales of those products, which is a facet of commerce that indirectly affects the Plaintiffs. See Ciardi, 762 N.E2d at 309. Alternatively, the Plaintiffs establish the commercial link with Motorola, albeit indirectly, by virtue of MSP's contract with Motorola. While Plaintiffs are not direct purchasers of the Motorola products at issue, the MSP-Motorola commercial contract was undertaken by a state agency purportedly working in service of the public, including Plaintiffs.

Plaintiffs have also articulated a cognizable injury under Chapter 93A. Here, the Plaintiffs allege numerous injuries: (A) the infliction of emotional distress, [Am. Compl. ¶¶ 84–87];  (B) loss of liberty and freedom through their criminal trials, [id. ¶ 88]; (C) loss of money due to expenses, fines, and fees with connection with their criminal proceedings, [id.]; (D) the violation of their right to privacy through secret recordings in violation of the Wiretap Act [id. ¶ 129]: and (E) the ongoing and illicit use by Motorola of these recordings through its ability to store and review recordings, [id. ¶¶ 53–54]. Because the Plaintiffs have claimed multiple injuries, this Court will evaluate each one.

The Plaintiffs first allege that they have suffered infliction of emotional distress. [Id. ¶¶ 84–87]. However, this allegation is nothing more than a legal conclusion. In fact, the only reference that the Amended Complaint makes to the infliction of emotional distress "merely parrot the elements of the cause of action." Ocasio-Hernández, 640 F.3d at 12. Because the Amended Complaint makes no factual allegations supporting any infliction of emotional distress, this Court may not consider the injury. See id. The same result is required for Plaintiffs' allegations of Motorola's ongoing use of the secret recordings. Plaintiffs have not proffered any facts that Motorola is actually using or profiting off the recordings stored in the cloud. Regarding Motorola's alleged violation of the Wiretap Act, this injury is insufficient because the First Circuit has held "the violation of an independent statute such as Chapter 272, § 99 [the Wiretap Act], does not itself 'satisf[y]' the injury requirement of c. 93A'" Walsh v. TelTech Systems, Inc., 821 F.3d 155, 161 (1st Cir. 2016) (alterations in original) (quoting Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 744 (Mass. 2013)). Instead, Plaintiffs must allege that they have, "as a result [of the 93A violation], suffered a *distinct* injury or harm that arises from the claimed unfair or deceptive act," Walsh, 821 F.3d at 161 (alterations in original) (quoting Tyler, 984 N.E.2d at 745–46).

The remaining injuries that Plaintiffs allege are the loss of liberty and freedom through their criminal trials and the loss of money associated with such trials – in other words, violations of their constitutional right to procedural due process. [Am. Compl. ¶ 88]. The Court finds that Plaintiffs' complained injury of a violation of their constitutional right to due process is cognizable under Chapter 93A because constitutional violations are treated as personal injury claims, and personal injuries caused by an unfair or deceptive act are recoverable under Chapter 93A, "even if the consumer lost no 'money' or 'property.'" Hershenow v. Enter. Rent-A-Car Co. of Bos., 840 N.E.2d 526, 533 (Mass. 2006) (quoting Haddad v. Gonzalez, 576 N.E.2d 658, 664 (Mass. 1991)). Here Plaintiff's injuries are the same as alleged in their Section 1983 claim. In Wilson v. Garcia, the Supreme Court held that Section 1983 claims are best characterized as tort actions for the recovery of damages for personal injuries. 471 U.S. 261, 276 (1985) (considering the purpose and history of Section 1983). While noting concerns about the broadness of the Supreme Court's approach, another session of this Court held that a Section 1983 claim alleging a violation of procedural due process should be treated as a claim for "personal injury" under Massachusetts law. Pomeroy v. Ashburnham Westminster Reg'l Sch. Dist., 410 F. Supp. 2d 7, 13–14 (D. Mass. 2006). Given that a claim alleging a violation of a plaintiff's constitutional right to procedural due process is properly characterized as a claim for personal injury, and personal injury is a recoverable loss for Chapter 93A even without economic loss, it logically follows that Plaintiffs have met the injury prong of their 93A claim.

Furthermore, the SJC has held that "[i]f any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss -- whether that loss be economic or noneconomic -- the consumer is entitled to redress under [Chapter 93A]." Hershenow, 840 N.E.2d

at 535.[6] Rights enshrined by the Constitution, including the right to procedural due process, are unequivocally legally protected interests. While Plaintiffs argue they have incurred economic losses in the fines they paid in their criminal cases, [Am. Compl. ¶ 88], even if they do not show actual damages, "under circumstances where there has been an invasion of a legally protected interest, but no harm for which actual damages can be awarded," Chapter 93A, § 9(3) provides for the recovery of minimum damages in the amount of $25." Leardi v. Brown, 474 N.E.2d 1094, 1101 (Mass. 1985). Therefore, Plaintiffs would be entitled to nominal damages even where no actual damages are shown. Id.

Similarly to this Order's analysis of injury for Plaintiff's Section 1983 claim against Motorola, *supra*, Plaintiffs meet their burden to show that Motorola's unfair conduct was the factual and proximate cause of the alleged violation of their constitutional rights. See Walsh, 821 F.3d at 160 ("A plaintiff's failure to establish both factual causation and proximate causation is fatal to her Chapter 93A claim." (citations omitted)). In cases analyzing allegations of deceptive conduct under 93A, the SJC has held that "plaintiffs need not show proof of actual reliance on a misrepresentation in order to recover damages under G.L. c. 93A . . . . Rather, '[w]hat the plaintiff[s] must show is a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception.'" Iannacchino, 888 N.E.2d at 886 n.12 (first citing, Slaney v. Westwood Auto, Inc., 322 N.E.2d 768 ( Mass. 1975); then quoting, International Fid. Ins. Co. v. Wilson, 443 N.E.2d 1308, 1314 (Mass. 1983)). As a plaintiff's actual reliance on a misrepresentation is not required for a claim of deceptive conduct, it follows that a claim for unfair

---

[6] The Court notes that "for there to be the invasion of a legally protected right [under Chapter 93A,] the plaintiff must establish that the defendant acted intentionally or knowingly." Haddad, 576 N.E.2d at 669. Here, Plaintiffs meet that threshold with their allegation that Motorola knew that the apps were out of compliance with Massachusetts law once MSP raised the issue.

conduct regarding the marketing and sale of a product does not require that Plaintiff is an actual purchaser of a defendant's product. This is further supported by Chapter 93A's authorization of a private right of action for people *indirectly* affected by a defendant's unfair and deceptive conduct. See discussion of commercial link requirement, *supra*.

Motorola's unfair conduct under the regulatory noncompliance theory articulated above was the factual, or "but-for" cause of Plaintiffs' injuries. But-for Motorola's manufacturing and sale of the Callyo apps, not to mention its failure to recall or modify those products, MSP officers would not have been able to make the covert recordings of the Plaintiffs in the first place. The question is not whether MSP officers would have otherwise made covert recordings of the Plaintiffs with a different technology. That is not before the Court. The Amended Complaint refers specifically to Motorola products used by MSP -- 10-21 and Mobile Body Bug -- and the resulting recordings stored on Motorola's cloud. The named applications' default settings to record without notice to the subjects being recorded created the conditions for violations of the Wiretap Act and Plaintiffs' due process rights. Motorola's products were the actual tool MSP officers utilized to enact the violations of Plaintiffs' rights.

Further, much like the analysis of Plaintiff's Section 1983 injury, the key question for proximate causation under 93A is whether the Plaintiffs' injury was a foreseeable result of Motorola's conduct, and the Court finds that it was. As stated previously, after the 2017 meeting between Motorola and MSP where MSP informed Motorola that the Callyo apps did not comply with the Wiretap Act, it became foreseeable to Motorola that MSP officers were using the apps to make covert recordings in criminal investigations. MSP's main function is to investigate crime and enforce criminal laws. Motorola specifically marketed the applications in question to law enforcement agencies and advertise the products as "hidden in plain sight technology [that] makes

body wires a thing of the past," highlighting features of the 10-21 app that disable users' video preview while streaming "to avoid detection." [Am. Compl. ¶¶ 80–81]. In Kaur v. World Bus. Lenders, LLC, the Massachusetts District Court denied a motion to dismiss a 93A claim where it found that defendant-bank should have foreseen an unacceptable probability of its predatory loan's failure because, in part, the lender "should have recognized at the outset that the plaintiffs were unlikely to be able to repay the loan." 440 F. Supp. 3d 111, 124 (D. Mass. 2020). Motorola should have recognized, after the 2017 meeting with MSP, that the default record setting of the Callyo apps was resulting in MSP officers secretly recording members of the public in pursuit of criminal investigations, particularly because that is exactly how Motorola marketed and sold these products to its target customers: law enforcement agencies. Further, it is a reasonable inference at the motion to dismiss stage that Motorola's failure to recall or modify the products would foreseeably result in such actions continuing unabated.

The Court pauses to note that Plaintiffs' allegations regarding Motorola's actual or constructive knowledge that MSP's secret recordings were resulting in constitutional violations and the extent to which Motorola could foresee these violations are just barely enough to cross into "plausibility" required to state a claim at a motion to dismiss. However, sufficient information to withstand summary judgment may only come after further details about the 2017 meeting are revealed in discovery. At the motion to dismiss stage, "a complaint does not have to evince a 'one-to-one relationship between any single allegation and a necessary element of the cause of action.'" A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 82 (1st Cir. 2013) (quoting Rodrígues-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013). "The critical question is whether the claim, viewed holistically, is made plausible by 'the cumulative effect of the factual allegations' contained in the complaint." Id. (quoting Ocasio-Hernández, 640 F.3d at 14). Plaintiffs have

alleged enough to make a plausible Chapter 93A claim against Motorola, and Motorola/Callyo's motion to dismiss Count II is **DENIED**.

**D.     Count III: Breach of Express Warranty Claim Against Motorola and Callyo**

To state a claim for breach of express warranty under Massachusetts law, the Plaintiffs must prove "'that the defendant promised a specific result' and that defendant failed to deliver on his promise and, therefore, breached the express warranty." Jackson v. Johnson & Johnson & Jannsen Pharms. Inc., 330 F.Supp.3d 616, 627 (D. Mass. 2018) (quoting Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 489 N.E.2d 172, 175 (Mass. 1986)). The Amended Complaint must therefore allege a plausible factual basis to conclude that Motorola made a promise that it would comply with all laws.

Although the Amended Complaint states that "Motorola/Callyo expressly warranted that it would comply with applicable laws," it fails to make any factual allegations that support that Motorola/Callyo made express promises or to whom these promises were made. [Am. Compl. ¶ 92]. Plaintiffs' statement is nothing more than a legal conclusion couched as a fact. Furthermore, the factual allegations made in the complaint simply state that "MSP informed Motorola/Callyo that its intercepting devices failed to comply with the Massachusetts two-party consent law" and that "Motorola/Callyo failed or refused to bring its intercepting devices into compliance." [Id. ¶¶ 51–52]. Notably absent from these allegations are any facts that Motorola/Callyo promised to bring their devices into compliance. [See id.] Because the Amended Complaint fails to allege any promises made by the Defendants, the motion to dismiss Plaintiffs' breach of express warranty claim against Motorola and Callyo is **GRANTED**.

**E.     Count IV: Breach of Implied Warranty of Merchantability Claim Against Motorola and Callyo**

26

Plaintiffs' claim against Motorola for breach of implied warranty of merchantability is essentially based on the same regulatory noncompliance theory as their Chapter 93A claim, namely, that Motorola impliedly warrantied that the Callyo apps "would comply with Massachusetts law," but the apps failed to comply with the Massachusetts Wiretap Act. [See Am. Compl. ¶¶ 98–99]. The SJC has held that when an implied warranty claim and a Chapter 93A claim are based on the same "theory of injury and the same set of alleged facts, they should survive or fail under the same analysis." Iannacchino, 888 N.E.2d at 889 ("in view of the interconnected nature of the plaintiffs' c. 93A and breach of implied warranty claims," the reasons that support the outcome of the Chapter 93A claim also warrant the same outcome for the breach of implied warranty claim). On this basis alone, Plaintiffs implied warranty claim could stand, as the Court has found their Chapter 93A claim survives Motorola's motion to dismiss. However, for the sake of clarity, the Court will do a full analysis of Plaintiffs breach of implied warranty claim.

Under Massachusetts law, "[a] seller breaches its [implied] warranty obligation when a product that is defective and unreasonably dangerous, for the [o]rdinary purpose' for which it is fit causes injury." Haglund v. Phillip Morris, Inc., 847 N.E.2d 315, 322 (Mass. 2006) (internal citations and quotation marks omitted). A product's "ordinary purpose" is encompassed by the product's "intended and foreseeable uses." Id. (citing Back v. Wickes Corp., 378 N.E.2d 964, 969 (Mass. 1978). A product's "fitness" depends primarily, but not exclusively, on "reasonable consumer expectations." Id. (citing Back, 378 N.E.2d at 970). The "relevant inquiry" for both ordinary purpose and fitness "focuses on the product's feature, not the seller's conduct." Haglund, 847 N.E.2d at 322 (citation omitted). Once again, foreseeability is a key consideration for liability, as "the manufacturer is not expected to design against 'bizarre, unforeseeable accidents,'" but "the manufacturer will be liable if its 'conscious design choices' fail to anticipate the reasonably

27

foreseeable risks of 'ordinary' use." Id. at 322–23 (quoting Back, 378 N.E.2d at 970). While many implied warranty claims are brought by direct consumers of a defendant's products, there is no requirement of privity when "the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or *be affected by the goods*." Mass. Gen. Laws ch. 106, § 2-318 (emphasis added). As Plaintiffs are bringing an implied warranty of merchantability claim based on a defective design, they must plead facts sufficient to allege that:

> (1) the defendant manufactured or sold the product that eventually injured [them]; (2) the product had a defect or otherwise unreasonably dangerous condition such that it was unsuited for the ordinary use for which it was sold; (3) [they were affected by] the product . . . in a manner that was at least foreseeable to the defendant; and [4] the defect or unreasonably dangerous condition was a legal cause of the their injury."

Taupier v. Davol, Inc., 490 F.Supp.3d 430, 439–40 (D. Mass. 2020); Mass. Gen. Laws ch. 106, § 2-318; Zoll Medical Corp. v. Barracuda Networks, Inc., 565 F. Supp. 3d 101, 107 (D. Mass. 2021).

Plaintiffs have put forth sufficient allegations that Motorola  "manufactured or sold the product that eventually injured [them]." Taupier, 490 F.Supp.3d at 439. Here, the Plaintiffs allege that "Motorola/Callyo marketed, manufactured, sold and otherwise procured intercepting devices and data-storage services to MSP," [Am. Compl. ¶ 29], and that "MSP secretly recorded an oral communication by [Plaintiffs] using a Motorola/Callyo device," [id. ¶¶ 35, 38, 41, 45]. The product in question is the Callyo apps. [Id. ¶ 98–99].  Following the same theory as their 93A claim, Plaintiffs' "eventua[l]" injury is the violation of their constitutional rights. See Taupier, 490 F.Supp.3d at 439; [Am. Compl. ¶ 101]. Further, unlike with Chapter 93A, Plaintiffs are not barred from alleging their injury under implied warranty theory is the Motorola's violation of Plaintiffs' rights under the Wiretap Act.  Therefore, Plaintiffs have satisfied the first requirement in showing that Motorola manufactured or sold the product that eventually injured them.

Plaintiffs next must allege that the Callyo apps "had a defect . . . such that [they were] unsuited for the ordinary use for which [they were] sold." Taupier, 490 F.Supp.3d at 439. Plaintiffs allege that the Callyo apps had a defect in that the apps would "record by default" without notice. [Am. Compl. ¶¶ 180–81; id. ¶¶ 79–81 (alleging Motorola marketed 10-21 as "hidden in plain sight technology [that] makes body wires a thing of the past," and that the app was designed to "avoid detection.") (alteration in original)]. Plaintiffs allege, and Motorola concedes, that Motorola sells the Callyo apps "exclusively to police departments and other law enforcement agencies to assist with investigations and community interactions." [ECF No. 30 at 8; Am. Compl. ¶¶ 25, 28–29]. Given that Motorola's primary market for the Callyo apps is agencies that enforce the law, it is reasonable to infer that the ordinary purpose of the apps includes that the apps comply with Massachusetts laws. "Fitness" is a question that depends, primarily but not exclusively, on consumer expectations. Haglund, 847 N.E.2d at 322 (citing Back, 378 N.E.2d at 970). Just as a diner consuming food served at a restaurant reasonably expects that the "food shall be fit to eat," a consumer reasonably expects that a product sold to law enforcement complies with legal standards in the jurisdiction. Cf. Friend v. Childs Dining Hall Co., 120 N.E. 407, 408–09 (Mass. 1918) (finding that when a restaurant serves food it creates an implied warranty of merchantability that the food is fit for consumption and will meet food safety standards). Thus, Plaintiffs have alleged that the Callyo apps' default record setting was a defect that made the products unfit for their ordinary use in law enforcement because the apps did not comply with Massachusetts' two-party consent law. [See Am. Compl. ¶¶ 51, 65–66, 179–80]. This is sufficient to meet the second element of Plaintiffs' implied warranty claim.

The third element of the implied warranty of merchantability claim requires Plaintiffs to show that they were affected by Motorola's Callyo apps "in a manner that was at least foreseeable

to the defendant." <u>Taupier</u>, 490 F.Supp.3d at 440; <u>see</u> Mass. Gen. Laws ch. 106, § 2-318. Here, Plaintiffs' Amended Complaint provides factual allegations that Motorola knowingly and intentionally entered into business with MSP regarding the Callyo apps, [Am. Compl. ¶¶ 50–51, 64–68], and that the purpose of the apps was to enable MSP to covertly make audio and video recordings, [<u>id.</u> ¶ 79–81]. For the same reasons as detailed in the Chapter 93A section, *supra*, after the 2017 meeting between Motorola and MSP, it was clearly foreseeable to Motorola that its apps were out of compliance with the Wiretap Act because MSP told the company so. [<u>Id.</u> ¶ 64–67]. At the hearing on the motion to dismiss, counsel for Motorola admitted that the 2017 meeting occurred, that MSP told Motorola the apps did not comply with Massachusetts law, and that Motorola refused to make any changes to the app because it disagreed with MSP that the app violated the law. [Hr'g Tr. 22:13–17 ("the Mass State Police said, We want you to change the default setting. And Motorola said, That's not how we build these things. We're not going to do it.")]. It is a reasonable inference that Motorola would have been put on notice at the time of the meeting that MSP was – intentionally or unintentionally – making covert recordings of subjects in criminal investigations. Therefore, it was foreseeable that Motorola's defective apps would "affect" Plaintiffs, who are Massachusetts residents and who were subjects of criminal investigations by MSP. Motorola's defiant refusal to bring the Callyo apps into compliance with the law indicates that the apps' default record feature was a "conscious design choice" that "fail[ed] anticipate the reasonably foreseeable risks of ordinary use." <u>Haglund</u>, 847 N.E.2d at 322 (citation omitted). Thus, there are sufficient factual allegations to support the third element of Plaintiffs' claim.

The final requirement that Plaintiffs must plead for their implied warranty of merchantability claim is that the Callyo apps' defect "was a legal cause of the plaintiff's injury."

<u>Taupier</u>, 490 F.Supp.3d at 440 (citations omitted). The language of this element makes clear that the defect need not be the only or even primary cause of Plaintiffs' injury – it simply must be "*a legal cause.*" <u>Id.</u> (emphasis added). For the same reasons that Plaintiffs can establish Motorola's conduct caused their constitutional injuries for the Chapter 93A claim, Plaintiffs have shown that the Callyo apps' default record setting was a legal cause of their implied warranty injury. The apps engendered MSP's covert recordings of the Plaintiffs. Thus, Plaintiffs meet their burden on the fourth element of their claim.

As Plaintiffs have put forth sufficient allegations to state a claim for implied warranty of merchantability against Motorola, the motion to dismiss Count III is **<u>DENIED</u>**.

**F.     <u>Count V: Breach of Implied Warranty of Fitness for Particular Purpose Claim Against Motorola and Callyo</u>**

Plaintiffs fail to allege sufficient facts to support their claim for implied warranty of fitness for a particular purpose. "The warranty of fitness for a particular purpose is similar to the warranty of merchantability but applies only 'where the seller at the time of contracting has reason to know any particular purpose for which the goods are required, and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.'" <u>Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc.</u>, 573 F. Supp. 2d 372, 381 (D. Mass. 2008) (quoting Mass. Gen. Laws ch. 106, § 2–315). A product's "particular purpose" is different from its "ordinary purpose" in that it "envisages a specific use by the buyer which is peculiar to the nature of his business.'" <u>Id.</u> (quoting Mass. Gen. Laws ch. 106, § 2–315). Failure to allege that the product had a particular purpose "that differed from the purpose for which it was ordinarily used" is fatal to stating a viable claim. <u>See</u> <u>Taupier</u>, 490 F.Supp.3d at 444.

Here, Plaintiffs allege that the purpose of the apps was to enable covert recordings by law enforcement officers in a manner that complies with Massachusetts laws. [Am. Compl. ¶¶ 79–81, 109]. This is the same purpose as the "ordinary purpose" Plaintiffs allege for their implied warranty of merchantability claim. Plaintiffs do not allege any other purpose that is separate and apart from this ordinary purpose. Because Plaintiffs fail to allege that the intercepting devices were used "for a purpose that differed from the purpose which it was ordinarily used," the motion to dismiss Plaintiffs' breach of implied warranty of fitness for particular purpose claim is **GRANTED**. See Taupier, 490 F.Supp.3d at 444.

### G.      Count VII: Massachusetts Wiretap Claim Against Motorola and Callyo

Plaintiffs have sufficiently alleged that Motorola violated the Wiretap Act because it "aid[ed]" MSP in secretly hearing or recording the Plaintiffs without their knowledge or consent. Section 99C of the Wiretap Act prohibits the "willful[ ] … interception of any wire or oral communication," by any person, "except as specifically provided in a few narrow exceptions." Curtatone v. Barstool Sports, Inc., 169 N.E.3d 480, 482, 482 n.4 (Mass. 2021); Mass. Gen. Laws ch. 272, § 99C. Under the act, "interception" "means to secretly hear, secretly record, *or aid another* to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication." Mass. Gen. Laws ch. 272, § 99B(4) (emphasis added). The act authorizes a private cause of action for:

> "[a]ny aggrieved person whose oral or wire communications were intercepted, disclosed or used . . . or whose personal or property interests or privacy were violated by means of an interception . . . against any person who so intercepts, discloses or uses such communications or who so violates his personal, property or privacy interest."

Mass. Gen. Laws ch. 272, § 99Q.

Plaintiffs proceed primarily on a theory that Motorola aided MSP to secretly intercept their communications. The word "aid" is not defined by the Wiretap Act and Massachusetts courts have not specifically analyzed its meaning in case law. While the Wiretap Act has both criminal and civil applications, the SJC has held that the mens rea of "willful" that is required for the criminal provision of the statute does not extend to civil actions authorized by the Act. Pine v. Rust, 535 N.E.2d 1247, 1249 (Mass. 1989)[7] ("To be actionable under § 99 Q, then, an interception need not rise to the level of criminal conduct covered by the penal provisions of the law."); Gouin v. Gouin, 249 F. Supp. 2d 62, 79 (D. Mass. 2003) (denying motion to dismiss Wiretap Act claim). Instead, the Court will draw from civil common law and apply the elements of aiding and abetting a tort, which, under Massachusetts law, require Plaintiffs to show: (1) that the principal defendant committed the relevant tort; (2) that the aider or abettor knew the principal was committing the tort; and (3) that the aider or abettor actively participated in or substantially assisted in the principal's commission of the tort. Go-Best Assets, Ltd. v. Citizens Bank, 972 N.E.2d 426, 438 (Mass. 2012) (citing Arcidi v. NAGE, Inc., 856 N.E.2d 167, 174 (Mass. 2006); Restatement (Second) of Torts § 876 (b) (1977)).

Here, the principal defendant is MSP, and the relevant "tort" is the secret interception of any wire or oral communication, i.e. the conduct prohibited by the Wiretap Act. The Court notes here again that Judge LoConto of the Fitchburg District Court held extensive evidentiary hearings on this issue and concluded that MSP violated the Wiretap Act through its secret recordings of the

---

[7] In Pine v. Rust, the SJC affirmed liability under the Wiretap Act for defendants that not only included the principal person who actually made the secret recordings at issue, but also her brother, who merely loaned the principal his tape recorder in furtherance of the recording. 535 N.E.2d at 1249. Pine supports the proposition that liability under the Wiretap Act extends not only to those making a secret recording, but also to those who "aid" a violation by knowingly supplying the instrumentality or means by which the recording is made. Here, "knowledge" refers to knowledge that the instrumentality will be used to make a covert recording.

public utilizing the Callyo apps. See Commonwealth v. Aponte, No. 2216CR000495 [ECF No. 57-3 at 23 ("[t]hese recordings [made by MSP] were in direct violation of the wiretap statute.")]. Judge LoConto's finding supports Plaintiffs' allegations of the same. Regarding the second element, with their allegations surrounding the 2017 MSP-Motorola meeting, Plaintiffs sufficiently allege that Motorola knew, actually or constructively, that MSP was committing Wiretap Act violations through usage of the Callyo apps. [See Am. Compl. ¶¶ 50–53]. Additionally, Plaintiffs have sufficiently alleged the third element that Motorola substantially assisted MSP in violating the Wiretap Act by providing the intercepting devices through which MSP made the secret recordings and by maintaining/storing the recordings on the cloud. [See id. ¶¶ 24, 26, 28–29]; see also Commonwealth v. Du, 219 N.E.3d 843, 854 (Mass. App. Ct. 2023) (finding transmission and storage of the recordings on the cloud was a form of "interception" under the Wiretap Act).

Accordingly, the Court finds that Plaintiffs have put forth a sufficient factual basis to withstand Motorola's motion to dismiss Count VII and the motion is **DENIED.**

### H.    Count VIII: M.G.L. c. 272, section 99 Claim Against Defendant Noble

Plaintiffs have requested to voluntarily dismiss this claim without prejudice. [ECF No. 57 at 2] ("Plaintiffs voluntarily dismiss without prejudice Count VIII against Mawn for violation of the Massachusetts Wiretap Act, M.G.L. c. 272, § 99 (the "Wiretap Act") now that the MSP have affirmatively stated that it is not consenting to have all claims against them brought in this single federal lawsuit."). As a result, Defendant Noble's motion to dismiss is **moot** as to Count VIII.

### I.    Count IX: Section 1983 Claim Against Defendant Noble[8]

---

[8] As stated *supra*, FN 1, since Colonel Mawn is no longer Superintendent of MSP, this Court automatically substituted Colonel Geoffrey D. Noble, Mawn's successor in interest, for purposes of the official capacity claims. [ECF No. 44].

34

In his motion to dismiss, Defendant Noble asserts four reasons why Plaintiff's Section 1983 claim fails. First, Noble contends that the Eleventh Amendment bars Plaintiffs' claim. [ECF No. 53 at 1]. Second, Noble contends that Plaintiffs lack standing to assert the constitutional violations they allege. [Id.] Third, Noble contends that Plaintiffs' claim fails on the merits. [Id.]. Finally, Noble contends that he is entitled to qualified immunity. [Id. at 2]. The Court will take each in turn.

### 1. *The Eleventh Amendment Does Not Bar Plaintiffs' Claim*

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The amendment "has been construed to bar all suits against a state for damages in the federal courts, regardless of the citizenship of the plaintiff." Cline v. Burke, 682 F. Supp. 3d 125, 131 (D. Mass. 2023) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 15 (1890)); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted). The Eleventh Amendment "also bars suits in federal court against states and state officers alleging violations of state law, regardless of the form of relief sought." Canales v. Gatzunis, 979 F. Supp. 2d 164, 173 (D. Mass. 2013).

State sovereign immunity is not absolute. "States may consent to suit in federal court, and, in certain cases, Congress may abrogate the States' sovereign immunity." Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990) (citations omitted). Moreover, a plaintiff may

35

also seek prospective relief against state officials acting in violation of federal law under the principles set forth in Ex parte Young. Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004).

As such, Plaintiffs can establish the Court's subject matter jurisdiction over the claim against Defendant Noble only if they can show (1) that Congress has abrogated the Commonwealth's sovereign immunity, (2) that the Commonwealth waived its sovereign immunity, or (3) that they are seeking prospective relief to remedy an ongoing violation of federal law.

It is undisputed that Section 1983 does not abrogate the Commonwealth's sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."). Because state officials acting in their official capacity are considered an extension of the state, Noble is entitled to sovereign immunity and cannot individually constitute a "person" under Section 1983. See Will, 491 U.S. at 71 (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Therefore, Congress has not abrogated the Commonwealth's immunity.

"The Eleventh Amendment also bars suits in federal court against states and state officers alleging violations of state law, regardless of the form of relief sought[,] . . . unless the state has waived its immunity." Canales, 979 F. Supp. 2d at 173. Defendant Noble has asserted immunity and indicated the state is not waiving its immunity. [ECF No. 54 at 1–2].

Plaintiffs still have a path forward. "While the Eleventh Amendment prohibits a party from bringing suit against a state in federal court, it does not prohibit a party from bringing suit against a state officer in federal court for prospective declaratory or injunctive relief under federal law." Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores

36

Galarza, 484 F.3d 1, 24 (1st Cir. 2007) (first internal citation omitted) (citing Ex parte Young, 209 U.S. 123, 155 (1908)). Ex parte Young thus provides an exception to the Eleventh Amendment's jurisdictional bar "in cases where prospective declaratory or injunctive relief is sought under federal law.'" Mills v. Maine, 118 F.3d 37, 54 (1st Cir. 1997). Ex parte Young's exception is focused on a prospective remedy; it does not permit "judgments against state officers declaring that they violated federal law in the past" or any other claims for "retrospective relief," including damages. P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 145–46 (1993) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)).

Here, Plaintiffs are seeking prospective declaratory or injunctive relief under federal law. As discussed below, Plaintiffs have plausibly alleged their prospective injunctive relief, thereby overcoming the Eleventh Amendment's immunity provisions and establishing standing for their Section 1983 claim.

### 2. The Plaintiffs Have Standing to Bring Their Claim

Defendant Noble contends that Plaintiffs lack standing to bring this claim because Plaintiffs have failed to allege that their injury is fairly traceable to MSP's actions. [ECF No. 54 at 7]. To establish Article III standing, Plaintiffs "must demonstrate (1) an injury in fact which is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) that the injury is 'fairly traceable to the challenged action,' and (3) that it is 'likely . . . that the injury will be redressed by a favorable decision.'" Massachusetts v. United States Dep't of Health & Hum. Servs., 923 F.3d 209, 221-22 (1st Cir. 2019) (quoting Lujan, 504 U.S. at 560). To establish the second element of the test for Article III standing, causation, Plaintiffs must "show a sufficiently direct causal connection between the challenged action and the identified harm." Katz, 672 F.3d at 71 (citing Lujan, 504 U.S. at 560). To establish the final element, redressability, Plaintiffs must

37

"show that a favorable resolution of [their] claim would likely redress the professed injury." Id. at 72.

Plaintiffs bring their claim under Section 1983 for "violation of constitutional rights secured by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution" (Count IX). [Am. Compl. ¶¶ 154–84]. As an initial matter, Plaintiffs withdrew "any claim that Count IX is based on a violation of the Fifth Amendment," which would have failed because Defendant Noble is not a federal actor. [ECF No. 57 at 8, n. 6]. Therefore, Plaintiffs are only proceeding on the basis that Defendant Noble violated their Fourteenth Amendment right to procedural due process and Sixth Amendment right to confrontation and effective assistance of counsel (through fair trial principles). [Id. at 8–9; Am. Compl. ¶¶ 6–8, 33, 154–84]. Plaintiffs allege MSP made surreptitious recordings of them, used the recordings in criminal investigations of the Plaintiffs, and failed to disclose the existence of the recordings to the Plaintiffs during their criminal prosecutions. [ECF No. 57 at 8; Am. Compl. ¶ 33]. More specifically, Plaintiffs allege that MSP violated their rights "to be presented with evidence against them, [to] confront their accusers, and [to] enjoy a fair and impartial trial." [Am. Compl. ¶ 167]. As injuries, Plaintiffs claim the deprivation of liberty and property interests as a result of their criminal prosecutions. [Id. ¶ 67].

Noble argues that Plaintiffs cannot satisfy the causation element because their injury resulting from their criminal charges and disposition cannot be traced to the unlawful recordings, when such recordings were never introduced during the Plaintiffs' criminal cases. [ECF No. 54 at 8]. However, it is MSP's intentional withholding of evidence that resulted in Plaintiffs' injuries. "[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). The duty imposed on

prosecutors under <u>Brady</u> "has always applied equally to . . . law enforcement officers." <u>Drumgold</u> <u>v. Callahan</u>, 707 F.3d 28, 38, 50 (1st Cir. 2013) (citing <u>Haley v. City of Boston</u>, 657 F.3d 39, 50 (1st Cir. 2011)).

To establish a claim under <u>Brady</u>, a plaintiff must show three elements are met: "(1) the evidence at issue must be favorable to the accused, *either* because it is exculpatory, *or* because it is impeaching; (2) that evidence must have been suppressed by the government either willfully or inadvertently; and (3) prejudice must have resulted." <u>United States v. Paladin</u>, 748 F.3d 438, 444 (1st Cir. 2014) (emphasis added) (citing <u>Strickler v. Greene</u>, 527 U.S. 263, 281–82 (1999)). When the suppressed evidence is impeaching, it must be material to serve as the basis for a <u>Brady</u> violation. <u>Paladin</u>, 748 F.3d at 444 (quoting <u>Conley v. United States</u>, 415 F.3d 183, 188 (1st Cir. 2005)). "Evidence is material when a 'reasonable probability [exists] that the result of the trial would have been different' if the suppressed evidence had been disclosed." <u>Paladin</u>, 748 F.3d at 444 (alteration in original) (quoting <u>Strickler</u>, 527 U.S. at 289). "Reasonable probability does not require that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." <u>Paladin</u>, 748 F.3d at 444 (internal quotation marks and citation omitted). Accordingly, "reversal might be warranted in some cases even if there is less than an even chance that the evidence would produce an acquittal." <u>Paladin</u>, 748 F.3d at 444 (quoting <u>Conley</u>, 415 F.3d at 188). "Once a <u>Brady</u> violation has been shown, the causation inquiry in a § 1983 [] suit is only a 'but for' inquiry pursuant to the preponderance of the evidence standard." <u>Drumgold</u>, 707 F.3d at 50.

Plaintiffs have alleged a <u>Brady</u> injury that is fairly traceable and caused by MSP's conduct. The Plaintiffs plead that MSP made and used the recordings in furtherance of criminal

investigations. [Am. Compl. ¶ 34]. As Fitchburg District Court Judge LoConto found, "the MSP had actual knowledge that the recordings were made and being made, and they were aware of their obligation to turn said recordings over to the Worcester DA's Office." Mem. & Order, Commonwealth v. Aponte, No. 2216CR000495, [ECF No. 57-3 at 33]. Judge LoConto reasoned that such "lack of disclosure by the MSP prevented defendants and their counsel from having the ability to properly investigate their cases" and that an ability to investigate would have revealed two issues: "identity and entrapment." [ECF No. 57-3 at 28]. A criminal prosecution begins with an investigation, and a focus on a particular subject begins with identification of that subject during the investigatory stage. The Supreme Court has acknowledged as much in extending the Fifth Amendment right against self-incrimination beyond "mere[] . . . evidence which may lead to criminal conviction," but also to "information which would furnish a link in the chain of evidence that could lead to prosecution." Maness v. Meyers, 419 U.S. 449, 461 (1975) (citing Hoffman v. United States, 341 U.S. 479, 486 (1951)). Here, Judge LoConto found that the MSP identified at least some of the defendants in the Callyo cases using screenshots from the videos recorded on the apps, and that "identification would not have been possible without these videos." Commonwealth v. Aponte, No. 2216CR000495, [ECF No. 57-3 at 29]. Because MSP intentionally failed to disclose the Callyo recordings to the prosecutors and defendants including the Plaintiffs, MSP obstructed Plaintiffs' ability to challenge key evidence from the investigations that ultimately led to their criminal prosecutions. The disclosure of the recordings would have allowed Plaintiffs to potentially impeach witnesses about the circumstances concerning MSP's identification of the Plaintiffs as criminal suspects. Plaintiffs' identifications from the video recordings were material to their convictions because – had the recordings been disclosed – it may have resulted in a different outcome in Plaintiffs' prosecutions, particularly if the identifications were suppressed as

40

a result of their challenge to the evidence. See Paladin, 748 F.3d at 444. But–for MSP's failure to disclose the recordings, Plaintiffs could have impeached this evidence. That MSP hid the recordings "undermine[s] confidence in the outcome of [Plaintiffs'] trial[s]." See id. Therefore, MSP's conduct in making the covert recordings and failing to disclose them in Plaintiffs' prosecutions caused the due process injuries alleged by Plaintiffs.

Defendant Noble also contends that the recordings could not have violated Plaintiffs' Sixth Amendment rights because they were never "presented against Plaintiffs, used as evidence, and were not a part of any trials or other proceedings." [ECF No. 54 at 12]. However, as discussed earlier, it is this withholding that deprived Plaintiffs of their rights to face the evidence against them, to investigate their cases, and to have a fair trial. Brady does not only implicate due process under the Fourteenth and Fifth Amendments, it also bears on "the Sixth Amendment right to the effective assistance of counsel and the Fifth Amendment right to confront witnesses." United States v. Snell, 899 F. Supp. 17, 20 (D. Mass. 1995). Indeed, the protections of these amendments "would be hollow without Brady disclosures." Id. Disclosure of Brady material "is important, if not essential, to the defense's ability to mount a defense. . . . [the] information affects the defense investigation, how it will allocate its resources, the voir dire questions the defense will seek, the framing of opening statements, the nature of the pre-trial research on evidentiary issues and jury instructions, in short, all of the strategic decisions which must be made long in advance of trial." Id. The Sixth Amendment protects an "accused's right, in a criminal trial, 'to be confronted with the witnesses against him' and 'to have compulsory process for obtaining witnesses in his favor.'" United States v. DeCologero, 530 F.3d 36, 73 n.19 (1st Cir. 2008) (quoting U.S. Const. amend. VI). MSP's covert recordings of Plaintiffs and its failure to disclose the recordings made it impossible for Plaintiffs to confront any witnesses that may have been part of their identification.

Appellant's Addendum, Page 41

Additionally, as discussed *infra* regarding the Compulsory Process Clause of the Sixth Amendment, Plaintiffs have sufficiently alleged that, as a result of MSP's actions, they were deprived of their rights to confront the evidence against them and have counsel effectively represent them in a fair trial.

Further, Plaintiffs allege that MSP's conduct is ongoing – that MSP continues to maintain and use covert Callyo recordings in criminal investigations. [ECF No. 57 at 8; Am. Compl. ¶ 184]. The Court finds this allegation plausible. First, neither MSP nor Motorola have stated that MSP no longer contracts with Motorola to use the Callyo apps, or that MSP has stopped its use of the Callyo apps or recordings made on the apps. When asked directly if MSP has "gotten rid of" the Callyo apps, counsel for MSP said "I don't know[.]" [Hr'g Tr. 35:10–12]. When asked if MSP has gotten rid of the evidence recorded through the apps or the ability to record surreptitiously, counsel for MSP evaded the question and stated, "I think that's irrelevant." [Id. 35:10–16]. Until there is proof or an unequivocal statement from MSP that it has completely terminated the use of the Callyo apps for covert recordings and that every single covert recording already made has been disclosed in any relevant criminal proceeding, the threat that MSP will engage in the same conduct against Plaintiffs and others similarly situated is a live issue. It is not as if Plaintiffs lead their lives with signs over their heads indicating their cases were implicated in the MSP audit of officers' use of the Callyo apps. In other words, MSP's past alleged injuries against Plaintiffs do not offer Plaintiffs any protection from the same conduct being repeated against them. To an MSP officer in the field, Plaintiffs are like any other member of the public, and until MSP unequivocally terminates the Callyo app recording features, Plaintiffs and putative class members could be subject to the same practices again. Further, Plaintiffs point out that MSP is presently continuing obstruct efforts to unravel the scope of the Callyo recordings by "failing to respond to public records requests,

<div align="center">42</div>

discovery orders, and trial summons concerning the use of the [10-21 app]." [ECF No. 57 at 4–5]. Taking the allegations of the Amended Complaint as true, Plaintiffs have sufficiently alleged a risk of future injury.

Regarding redressability, Plaintiffs have plausibly shown "that a favorable resolution of [their] claim would likely redress the professed injury." Katz, 672 F.3d at 72. Plaintiffs plead "injunctive relief" and argue that the Court should "grant such other and further relief as is just and proper." [Am. Compl. ¶ 184, p. 24]. Drawing all inferences in the Plaintiff's favor, the injunctive relief they are seeking is for MSP to stop the conduct that Plaintiffs complain of – the use of the Callyo apps to make surreptitious recordings of the public, and MSP's failure to disclose covert recordings made with the Callyo apps in criminal prosecutions. MSP argues that Plaintiffs' allegations of injunctive relief are not particular enough to state a claim; however, MSP's challenge "is premature at this stage." Trailblazhers Run Co. v. Bos. Ath. Assn, No. 1:24-cv-10950-IT, 2025 U.S. Dist. LEXIS 51433, at *31 (D. Mass. Mar. 20, 2025) (citing Labonte v. Riverside Park Enterprises, Inc., 2022 U.S. Dist. LEXIS 213367, 2022 WL 17253663, at *5 (D. Mass. Nov. 28, 2022) ("A Rule 12(b)(6) analysis tests the plausibility of claims, and remedies are not claims.") (citation omitted)). The injunctive relief described above would cease MSP's use of the Callyo apps in covert recordings and would prevent MSP from unlawfully withholding evidence from the recordings in criminal prosecutions. Thus, Plaintiffs have established the final prong of standing for their Section 1983 claim: redressability.

In sum, Plaintiffs have met their three-pronged burden to establish standing. Further, that they are seeking prospective injunctive relief as described in the discussion on redressability above, *supra*, Plaintiffs can overcome Defendant Noble's Eleventh Amendment sovereign immunity challenge under the exception laid out in Ex Parte Young. See Asociación De

<u>Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio</u>, 484 F.3d at 24 (citing <u>Ex parte Young</u>, 209 U.S. at 155) (noting a party is not prohibited from bringing suit against a state officer in federal court for prospective declaratory or injunctive relief under federal law).

### 3.   *The Plaintiffs Have Sufficiently Plead a Claim*

For the same reasons that Plaintiffs have standing to assert their Section 1983 claim, they also have alleged sufficient facts to state a claim to withstand a motion to dismiss. Plaintiffs have met their burden on proceeding with their procedural due process claim under their <u>Brady</u> theory, as discussed above, *supra*. In terms of stating a claim for a violation of their Sixth Amendment rights, Plaintiffs are able to meet their burden under the same analysis as their procedural due process claim.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, . . . , the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" <u>Crane v. Kentucky</u>, 476 U.S. 683, 690–91 (1986) (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485(1984) <u>and</u> (collecting cases)). Further, "[t]he Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment" <u>Strickland v. Washington</u>, 466 U.S. 668, 684–685 (1984). The Sixth Amendment protects both the right of confrontation and the right of compulsory process. U.S. Const. amend. XI.[9] Plaintiffs' claimed injuries fall most squarely under the Compulsory

---

[9] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. XI. Both Clauses are made obligatory on the States by the Fourteenth Amendment. <u>Pointer v. Texas</u>, 380 U.S. 400, 403–06 (1965) (Confrontation Clause); <u>Washington v. Texas</u>, 388 U.S. 14, 17–19 (1967) (Compulsory Process Clause).

44

Process Clause, which provides criminal defendants "the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." United States v. Velazquez-Fontanez, 6 F.4th 205, 221-222 (1st Cir. 2021) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987)). Judge LoConto found that MSP Callyo recordings were, at least in some cases, used to identify defendants who were later prosecuted. Mem. & Order, Commonwealth v. Aponte, No. 2216CR000495, [ECF No. 57-3 at 28]. In challenging MSP's failure to disclose the Callyo recordings, Plaintiffs implicate their right to challenge the evidence that is facing them, i.e. "the right to put before a jury evidence that might influence the determination of guilt." Velazquez-Fontanez, 6 F.4th at 221-222 (quoting Ritchie, 480 U.S. at 56).[10]

In Pennsylvania v. Ritchie, the Supreme Court considered whether a defendant had a constitutional right to pretrial disclosure of confidential information. 480 U.S. 39. In reviewing Ritchie's claim, the Court noted the lack of clarity regarding how courts should analyze a claim under the Compulsory Process Clause and concluded that a claim brought pursuant to the Compulsory Process Clause is best analyzed under a Due Process analysis:

> This Court has never squarely held that the Compulsory Process Clause guarantees the right to discover the *identity* of witnesses, or to require the government to produce exculpatory evidence. But cf. United States v. Nixon, 418 U.S. 683, 709, 711 (1974) (suggesting that the Clause may require the production of evidence). Instead, the Court traditionally has evaluated claims

---

[10] Plaintiffs claim the liberty or property interest at issue for due process is the deprivation of liberty through being convicted and the monetary losses incurred through fines. [Am. Compl. ¶¶ 6–8, 67]. However, the Court notes that Plaintiffs may also have a due process interest in evidentiary material that was not disclosed to them, even when the import of that material on the outcome of their trials is unknown. See also Wade v. Brady, 460 F. Supp. 2d 226, 245 (D. Mass. 2006) ("The [Supreme] Court [in Arizona v. Youngblood] also held that defendants had a Due Process interest in 'evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.' [] Bad faith destruction of such evidence violates the Constitution, even though its exculpatory value is highly uncertain.") (quoting Arizona v. Youngblood, 488 U.S. 51, 57 (1988))).

45

such as those raised by Ritchie under the broader protections of the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). <u>See also</u> <u>Wardius v. Oregon</u>, 412 U.S. 470 (1973). Because the applicability of the Sixth Amendment to this type of case is unsettled, and because our Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, we adopt a due process analysis for purposes of this case. Although we conclude that compulsory process provides no greater protections in this area than those afforded by due process, we need not decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment. It is enough to conclude that on these facts, Ritchie's claims more properly are considered by reference to due process.

480 U.S. at 56. As the Court has found that Plaintiffs plausibly allege a due process violation based on <u>Brady</u>, the same conclusion must follow that they have stated a claim for a Sixth Amendment violation based on the Compulsory Process Clause.

### 4.     *Qualified Immunity Does Not Bar Plaintiffs' Claim*

As a final line of defense, Defendant Noble raises that, even if this Court were to find Plaintiffs have stated a claim under Section 1983, the doctrine of qualified immunity would bar their claim. More specifically, Defendant Noble argues that "the conduct at issue does not implicate any 'clearly established' right to the discovery of evidence unfavorable to a criminal defendant that is not used in their criminal proceeding." [ECF No. 54 at 13].  However, because qualified immunity is an affirmative defense and because Defendant Noble's argument requires the court to examine the "conduct at issue," it is premature to consider this argument at a motion to dismiss stage. <u>Alianza Ams. V. DeSantis</u>,727 F. Supp. 3d 9, 55 (D. Mass. 2024) ("[A]s a general rule, 'the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion.'") (citations omitted); <u>Chavez v. Zachowski</u>, 2013 U.S. Dist. LEXIS 163008, at * 9 (D. Mass. Nov. 15, 2013) ("To the extent the defendants are seeking a ruling on the merits on their qualified immunity defense, their request is premature.").

Accordingly, Plaintiffs have sufficiently stated a Section 1983 claim by demonstrating that Defendant Noble violated Plaintiffs' Fourteenth Amendment right to procedural due process and Sixth Amendment rights. Thus, Defendant Noble's motion to dismiss Count IX is **DENIED**.

## IV.    **CONCLUSION**

For the reasons stated above, the Defendants' motions to dismiss, [ECF Nos. 29, 53], are **GRANTED IN PART and DENIED IN PART.**


**SO ORDERED.**

Dated: March 28, 2025

<div style="text-align:right">

 /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge

</div>